821 So.2d 417 (2002)
Victor GIORGETTI, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3594.
District Court of Appeal of Florida, Fourth District.
July 17, 2002.
*418 Carey Haughwout, Public Defender, and Dea Abramschmitt, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Douglas J. Glaid, Assistant Attorney General, West Palm Beach, for appellee.

CORRECTED OPINION ON MOTION FOR REHEARING
FARMER, J.
We withdraw our opinion on motion for rehearing originally released May 22, 2002, and substitute this corrected opinion. We deny the motion for rehearing of our decision after rehearing but grant certification of a question of great public importance.
Defendant's motion for rehearing after our summary affirmance calls our attention to an issue he argued during briefing, the significance of which we failed to appreciate in our decision affirming his conviction. Upon reconsideration we withdraw our affirmance and reverse his conviction for a new trial and certify a question of great public importance to the supreme court.
In November 1992 defendant was convicted of an indecent assault committed in January 1991 and was sentenced to 2 years imprisonment, followed by 7-years probation. In March 1997 his probation status was changed to "administrative" by which the state's supervision was converted to "non-contact." On April 30, 1999, defendant's probation was terminated.[1] Between that date and the date of his arrest *419 on the current charge defendant moved to a new address.
Barely two weeks after the termination of probation, an officer came into contact with defendant at his new place of abode while looking for another person. The officer asked defendant for identification, and then checked his name through the computer system. The officer determined that the address shown on the identification was different from the place where he had his residence. Defendant was charged with violations of sections 943.0435 and 944.607 for failing to report his change of address within 48 hours.[2],[3] Violations of these two statutes (the sexual offender registration statutes) are punishable as third-degree felonies.[4]
Before trial, defendant challenged the constitutionality of the sexual offender registration statutes because they do not contain an intentor mens rearequirement. The trial court denied the challenge. At trial the state asked for, and the trial court approved, a special jury instruction saying:
"The State does not have to prove the elements of intent; nor does the State have to prove the defendant acted with malicious or wrongful mental attitude."
Defendant objected to the instruction. The jury convicted him as charged.
On appeal defendant raised four issues, the first involving the constitutionality of the statutes in question in failing to require guilty knowledge, mens rea, intent, or scienter; and the last involving the special jury instruction declaring that guilty knowledge, mens rea, intent, or scienter need not be proved by the state to show a violation of the sexual offender registration statutes. In affirming we merely cited our prior decisions in Simmons v. State, 753 So.2d 762 (Fla. 4th DCA 2000) and Quinn v. State, 751 So.2d 627 (Fla. 4th DCA 1999). Quinn decided the constitutional issue and held that section 943.0435 was not invalid in failing to contain an explicit textual requirement of scienter or an element of guilty knowledge. Simmons simply follows Quinn in that holding. Neither case addresses the entirely separate issue as to whether the court should nevertheless read such a requirement into the statute. We now proceed to address that issue.
The concept of a strict liability crime, without any requirement of scienter or guilty knowledge, has been addressed in several cases and has been approved by the Supreme Court. For example in United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922), the Court appeared to give general approval to such statutes when the subject constitutes "regulatory measures in the exercise of what is called the police power." 258 U.S. at 252, 42 S.Ct. 301. In United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922), the Court flatly stated: "If the *420 offense be a statutory one, and intent or knowledge is not made an element of it, the indictment need not charge such knowledge or intent." 258 U.S. at 288, 42 S.Ct. 303.
In Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), however, the Court seemed reluctant to go quite so far. Referring to these earlier decisions, Justice Jackson wrote:
"The Behrman and Balint offenses belong to a category of another character, with very different antecedents and origins. The crimes there involved depend on no mental element but consist only of forbidden acts or omissions. This, while not expressed by the Court, is made clear from examination of a century-old but accelerating tendency, discernible both here and in England, to call into existence new duties and crimes which disregard any ingredient of intent. The industrial revolution multiplied the number of workmen exposed to injury from increasingly powerful and complex mechanisms, driven by freshly discovered sources of energy, requiring higher precautions by employers. Traffic of velocities, volumes and varieties unheard of came to subject the wayfarer to intolerable casualty risks if owners and drivers were not to observe new cares and uniformities of conduct. Congestion of cities and crowding of quarters called for health and welfare regulations undreamed of in simpler times. Wide distribution of goods became an instrument of wide distribution of harm when those who dispersed food, drink, drugs, and even securities, did not comply with reasonable standards of quality, integrity, disclosure and care. Such dangers have engendered increasingly numerous and detailed regulations which heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare.
"While many of these duties are sanctioned by a more strict civil liability, lawmakers, whether wisely or not, have sought to make such regulations more effective by invoking criminal sanctions to be applied by the familiar technique of criminal prosecutions and convictions. This has confronted the courts with a multitude of prosecutions, based on statutes or administrative regulations, for what have been aptly called `public welfare offenses.' These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed *421 his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving." [e.s., c.o., f.o.]
342 U.S. at 252-56, 72 S.Ct. 240. While the sexual offender registration statutes conceivably fall into the category and policies described by Justice Jackson, we note his emphasis that when guilty knowledge is not required the penalties for such offenses are "relatively small."
Several years later, in United States v. United States Gypsum, 438 U.S. 422, 442, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), the Court held that a violation of Sherman Anti Trust-Act punishable by a term of 3 years imprisonment was inconsistent with any holding that the Act should be construed as a strict liability crime. The Court pointedly said that "[c]ertainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement" and that criminal offenses requiring no mens rea have a "generally disfavored status." 438 U.S. at 438, 98 S.Ct. 2864. The Court held that it would apply the "background assumption" requiring courts to infer mens rea to the Sherman Act. In Liparota v. United States, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), a case involving criminal charges for illegal possession of food stamps, the Court stated that "the failure of Congress explicitly and unambiguously to indicate whether mens rea is required does not signal a departure from this background assumption of our criminal law." 438 U.S. at 426, 98 S.Ct. 2864.
More recently in Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), the Court similarly held that the National Firearms Act required a presumed scienter or guilty knowledge requirement where the criminal penalties were punishable by up to 10 years imprisonment. In United States v. X-Citement Video Inc., 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), the Court held that the child pornography statute was "more akin to the common-law offenses against the `state, the person, property, or public morals,' [citing Morissette, 342 U.S. at 255, 72 S.Ct. 240] that presume a scienter requirement in the absence of express contrary intent." 513 U.S. at 71-72, 115 S.Ct. 464. Once again the Court held that, in the absence of an expressed contrary intent, a broadly applicable guilty knowledge requirement must be presumed.
Our own supreme court has followed these decisions in its interpretation of Florida law. In Chicone v. State, 684 So.2d 736, 742 (Fla.1996), after citing many of the above decisions, our court adopted that view that punishing a statutory violation as a felony is incompatible with the theory of strict liability crimes. The court thereupon read a broadly applicable guilty knowledge requirement into statutory offenses relating to possession of illegal drugs. Moreover, the court also explicitly rejected the idea that lack of guilty knowledge should be treated as an affirmative defense. 684 So.2d at 744 ("we hold that the State was required to prove that Chicone knew of the illicit nature of the items in his possession."). The court emphasized that guilty knowledge is part and parcel of the crime itself and encompassed within the state's burden to prove guilt beyond a reasonable doubt. Id.; see also Scott v. State, 808 So.2d 166 (Fla.2002) (same); *422 State v. Williamson, 813 So.2d 61(Fla.2002) (same).
The Chicone court noted that, while the legislature is vested with the authority to define crimes, determining whether intent actually is an element of the crime defined by statute is a matter of the meaning of statutory text, a function left to the judiciary. The court quoted from Staples and went on to state:
"Close adherence to the early cases described above might suggest that punishing a violation as a felony is simply incompatible with the theory of the public welfare offense. In this view, absent a clear statement from Congress that mens rea is not required, we should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with mens rea. Staples, 511 U.S. at 617-18, 114 S.Ct. 1793 (footnotes omitted). We agree with this view and, consistent therewith, conclude that the criminal statutes at issue before us today are more akin to offenses that presume a scienter requirement in the absence of express contrary intent." [c.o., e.s.]
Chicone, 684 So.2d at 742. As the violation of the sexual offender registration statutes is a felony, absent express contrary intent by the legislature, we must presume that mens rea is an element of the crime.
From these decisions we conclude that the trial court erred in giving the special instruction absolving the state of the burden to prove guilty knowledge or scienter or mens rea in this prosecution for a criminal violation of the sexual offender registration statutes. These statutes create no mere informational reporting requirement, the violation of which is punished with a small fine. In this case the penalty for the offense turned out to be more than six and one-half years imprisonment. In spite of the failure of the legislature to include an explicit element of intent in the statutory text, the authorities cited above require the courts to read a "broadly applicable" intent requirement into the state's burden of proof. We do so now, thus requiring a new trial.
We also address defendant's claim of error in the trial court's admission of testimony by the arresting officer to the effect that when arrested defendant did not respond or object when the officer advised him that he was being arrested for failing to register his new address. Defendant objected to this re-direct examination on the grounds that it amounted to a comment on his right of silence. We agree that it was prejudicial error to allow this questioning.
The cases generally condemn any attempt to establish that defendant did not protest his arrest by declaiming his innocence in some way when he was being arrested. See, e.g., Harris v. State, 726 So.2d 804 (Fla. 4th DCA 1999). Evidence or argument that is fairly susceptible of being deemed a comment on the right of silence should be excluded. State v. Smith, 573 So.2d 306, 317 (Fla.1990). We do not agree that the record establishes that the testimony to which defendant objected concerned events before arrest. In fact the questioning itself most strongly suggests otherwise. Nor do we find the testimony an invited response to the defense line of questioning that defendant was at all times helpful and cooperative. On any retrial such questioning shall be excluded.
Because our decision on the primary issue in this case is likely to have a widespread effect on cases in the appellate pipeline and the importance of the issue involved, we hereby certify the following *423 issue to the Supreme Court as a question of great public importance:
Does Chicone apply to the crime created by the sexual offender registration statutes and thus compel the court to presume a scienter or mens rea requirement even though the statutory text fails to contain an explicit requirement of such guilty knowledge?
REVERSED.
WARNER, J., concurs.
ROBY, WILLIAM L., Associate Judge, concurs specially with opinion.
ROBY, WILLIAM L., Associate Judge, concurring specially.
I do not join in the opinion as to reading a broadly applicable intent requirement into the state's burden of proof. The legislature did not include the explicit element of intent into the statutory text and I do not believe that the court should rewrite the laws of this state. The legislature is constitutionally charged with this task. The previously rendered opinion of this court correctly reflects the law of this state on the issues raised in this appeal except as noted below. See Simmons v. State, 753 So.2d 762 (Fla. 4th DCA 2000); Quinn v. State, 751 So.2d 627 (Fla. 4th DCA 1999).
I do agree, however, with the reversal to order a new trial based upon Harris and Smith and I agree with Judge Farmer regarding his reasoning as to the error regarding the improper comments on the defendant's right to remain silent. I further agree with Judge Farmer as to the rehearing and pretrial release aspects of this case.
NOTES
[1] Both defendant's probation officer and his attorney testified they did not advise him that even though his probation was terminated he would continue to be under a duty to register changes in his address.
[2] See § 943.0435(4), Fla. Stat. (2000) ("within 48 hours after any change in the offender's permanent or temporary residence...the offender shall report in person to a driver's license office, and shall be subject to the requirements specified in subsection (3).").
[3] See § 944.607(9), Fla. Stat. (2000) ("A sexual offender ... who is under the supervision of the Department of Corrections but who is not incarcerated shall ... register in the manner provided in s. 943.0435(3), (4), and (5)....").
[4] See § 943.0435(9), Fla. Stat. (2000) ("A sexual offender who does not comply with the requirements of this section commits a felony of the third degree, punishable as provided in s. 775.082 ...."), and § 775.082(3)(d), Fla. Stat. (2000) ("For a felony of the third degree, by a term of imprisonment not exceeding 5 years ."); see also § 921.0024(2), Fla. Stat. (2000) ("If the lowest permissible sentence under the code exceeds the statutory maximum as provided in s. 775.082, the sentence required by the code must be imposed.").