868 So.2d 512 (2004)
STATE of Florida, Petitioner,
v.
Victor GIORGETTI, Respondent.
No. SC02-1812.
Supreme Court of Florida.
March 4, 2004.
*513 Charles J. Crist, Jr., Attorney General, and Michael J. Neimand and Douglas J. Glaid, Senior Assistant Attorneys General, Fort Lauderdale, FL, for Petitioner.
Carey Haughwout, Public Defender, and Dea Abramschmitt, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Respondent.
ANSTEAD, C.J.
We have for review a decision from the Fourth District Court of Appeal on a question which the court certified to be of great public importance. Giorgetti v. State, 821 So.2d 417 (Fla. 4th DCA 2002). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons stated in this opinion, we rephrase the question:
Does the crime created by the sexual offender registration statutes require the State to prove knowledge of the registration requirement by the offender as an element of the crime?
We answer the rephrased question in the affirmative and approve the Fourth District's decision, which holds that before an offender may be held criminally liable for failing to register, the State must prove that he was aware of a registration requirement.

STATEMENT OF THE CASE AND FACTS
In November of 1992, respondent, Victor Giorgetti, was convicted of indecent assault and sentenced to two years imprisonment, followed by seven years' probation. Giorgetti v. State, 821 So.2d 417, 418 (Fla. 4th DCA 2002). In March of 1997, Giorgetti's probation status was changed to administrative probation, meaning that while the probationary term technically continued, Giorgetti was no longer required to contact *514 his probation officer. Id. Thereafter, on April 30, 1999, Giorgetti's probation status was ended. Id. Following the termination of probation, Giorgetti moved to a new address. Id. at 418-19.
Sometime after his probation was terminated, a police officer came into contact with Giorgetti at his new address while the officer was looking for another person on an unrelated matter. Id. at 419. The officer asked Giorgetti for identification and when the officer checked Giorgetti's name using a mobile computer system, it identified Giorgetti as a sexual offender. The officer also noted that the address shown on Giorgetti's identification was different from the address where Giorgetti was then residing. Id. As a result of this contact, Giorgetti was arrested and charged with failing to report his change of address as required in sections 943.0435 and 944.607(9), Florida Statutes (2000) (hereinafter "the sexual offender registration statutes"). Id.[1] Violations of these registration statutes are punishable as third-degree felonies.[2]
Giorgetti pleaded not guilty to the charges, claiming he was not aware of the registration requirements, and he subsequently challenged the constitutionality of the sexual offender registration statutes based on the absence of a knowledge requirement. 821 So.2d at 419. The trial court denied Giorgetti's pretrial constitutional challenge, and at trial the State asked for, and the trial court gave, a jury instruction explaining that the State was not required to prove that this statute had an element of knowledge or that Giorgetti intended to violate the statute. Id.[3] Giorgetti was convicted of violating the sexual offender registration statutes.
Giorgetti appealed his convictions to the Fourth District Court of Appeal, challenging the trial court's ruling that no proof of Giorgetti's knowledge of the registration provisions of the statutes had been required. Id. Upon a review of United States Supreme Court decisions, and this Court's decision in Chicone v. State, 684 So.2d 736 (Fla.1996), the district court reversed Giorgetti's conviction and remanded for a new trial. The court concluded that because "the violation of the sexual offender registration statutes is a felony, absent express contrary intent by the legislature, we must presume that mens rea is an element of the crime." Giorgetti, 821 So.2d at 422. The court explained:
[W]e conclude that the trial court erred in giving the special instruction absolving the state of the burden to prove guilty knowledge or scienter or mens rea in this prosecution for a criminal violation of the sexual offender registration statutes. These statutes create no mere informational reporting requirement, the violation of which is punished with a small fine. In this case the penalty for the offense turned out to be more than six and one-half years imprisonment. In spite of the failure of the legislature to include an explicit element *515 of intent in the statutory text, the authorities cited above require the courts to read a "broadly applicable" intent requirement into the state's burden of proof. We do so now, thus requiring a new trial.
Id. The Fourth District certified the same issue it resolved as one of great public importance.

LAW AND ANALYSIS

Preference in Favor of Knowledge
Judge Farmer's opinion for the district court (reviewing the controlling decisions of this Court and the of United States Supreme Court), provides an excellent analysis and record of the historical preference in favor of a requirement of knowledge. We acknowledge and repeat his efforts here to explain our similar conclusion.
Initially, we would note that the Legislature generally has broad authority to determine any requirement for intent or knowledge in the definition of a crime. See Reynolds v. State, 842 So.2d 46, 49 (Fla.2002). To determine whether the Legislature included a knowledge requirement in any given statute, we first look to the statute's plain language. Id. In the instant case, however, the sexual offender registration statutes provide no explicit guidance as to whether the Legislature intended there to be a knowledge requirement for proving a violation of the statute. See § 943.0435, Fla. Stat. (2000); § 944.607(9), Fla. Stat. (2000). The statutory provisions dealing with the sexual offender registration requirements simply contain no express direction.
At common law, all crimes consisted of both an act or omission coupled with a requisite guilty knowledge or mens rea. See United States v. Balint, 258 U.S. 250, 251, 42 S.Ct. 301, 66 L.Ed. 604 (1922). Hence, as a general rule, guilty knowledge or mens rea was a necessary element in the proof of every crime. Id.; see also United States v. United States Gypsum Co., 438 U.S. 422, 436, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) ("The existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."). Subsequently, as chronicled in numerous U.S. Supreme Court decisions, this rule was followed with regard to statutorily defined crimes, even if the statute did not expressly include a knowledge requirement. See Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) ("[S]ilence ... does not necessarily suggest that Congress intended to dispense with a conventional mens rea element, which would require that the defendant know the facts that make his conduct illegal."). In fact, the United States Supreme Court "has on a number of occasions read a state-of-mind component into an offense even when the statutory definition did not in terms so provide." United States Gypsum Co., 438 U.S. at 437, 98 S.Ct. 2864. Moreover, because of the strength of the traditional rule that requires mens rea, offenses that require no mens rea are generally disfavored. Staples, 511 U.S. at 606, 114 S.Ct. 1793.
Thus, the Supreme Court has concluded that "some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime." Id. In other words, the Court has virtually created a presumption in favor of a guilty knowledge element absent an express provision to the contrary.
As noted by Judge Farmer, we relied on these Supreme Court decisions in Chicone v. State, 684 So.2d 736 (Fla.1996), wherein we examined sections 893.13(1)(f), Florida Statutes (1991) (possession of controlled substance) and 893.147(1), Florida Statutes *516 (1995) (possession of drug paraphernalia). See Chicone, 684 So.2d at 737-38. Like the sexual offender registration statutes in the instant case, both possession statutes involved in Chicone were silent as to whether a knowledge element was required. Id. After setting out the Supreme Court decisions discussed above, we explained:
The United States Supreme Court has stated that offenses that require no mens rea generally are disfavored, and has suggested that some indication of legislative intent, express or implied, is required to dispense with mens rea as an element of a crime. There is no such indication of legislative intent to dispense with mens rea here. Our holding depends substantially on our view that if the legislature had intended to make criminals out of people who were wholly ignorant of the offending characteristics of items in their possession, and subject them to lengthy prison terms, it would have spoken more clearly to that effect. Interpreting the statutes as dispensing with scienter would "criminalize a broad range of apparently innocent conduct."...
... We believe it was the intent of the legislature to prohibit the knowing possession of illicit items and to prevent persons from doing so by attaching a substantial criminal penalty to such conduct.... As all agree, including the State, the legislature would not ordinarily criminalize the innocent possession of illegal drugs.
Id. at 743-44 (citations and footnotes omitted). Thus, like the United States Supreme Court, we held in Chicone that we will ordinarily presume that the Legislature intends statutes defining a criminal violation to contain a knowledge requirement absent an express indication of a contrary intent. An express provision dispensing with guilty knowledge will always control, of course, since in that instance the Legislature will have made its intent clear.

Limitations on the Removal of Knowledge as a Requirement
Implicit in the common law rule and the subsequent U.S. Supreme Court decisions is the recognition that knowledge is desirable in order "to safeguard innocent persons from being made the victims of unlawful acts perpetrated by others, and of which they have no knowledge." Chicone, 684 So.2d at 743 (quoting Frank v. State, 199 So.2d 117, 121 (Fla. 1st DCA 1967)). This policy is consistent with the concept that criminal sanctions are ordinarily reserved for acts of intentional misconduct. Chicone also noted the judicial policy that "[t]he group of offenses punishable without proof of any criminal intent must be sharply limited." Id. (quoting Francis Bowes Sayre, Public Welfare Offenses, 33 Colum. L.Rev. 55, 70 (1933)). Moreover, as the U.S. Supreme Court has noted, although the legislature has the broad authority to define the elements of a crime, the legislature must still "act within any applicable constitutional constraints in defining criminal offenses." Liparota v. United States, 471 U.S. 419, 424 n. 6, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985).
In Chicone, we relied extensively on Judge Cowart's opinion in State v. Oxx, 417 So.2d 287 (Fla. 5th DCA 1982). In Oxx, Judge Cowart recognized three possible restraints on the Legislature's power to eliminate scienter requirements from a statute: (1) statutes that codify common law mala in se or "infamous" crimes where intent is considered to be so inherent in the concept of the common law offense that it was deemed included as an element; (2) statutes that would tend to chill the exercise of First Amendment rights if intent were not required; and (3) *517 statutes that impose an affirmative duty to act on an individual, and then penalize the failure to act. See Oxx, 417 So.2d at 289-90. With regard to this third category, Judge Cowart explained:
[A] third constitutional restriction may come into play where the statute imposes an affirmative duty to act and then penalizes the failure to comply. In such an instance, if the failure to act otherwise amounts to essentially innocent conduct, the failure of the penal statute to require some specific intent or knowledge may violate due process.
Id. As an example of this third restriction, Judge Cowart cited to the Supreme Court's decision in Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). We find the Lambert decision and its analysis controlling to our decision here.

Lambert
In Lambert, the Supreme Court held that a Los Angeles municipal ordinance similar to the statute in the instant case was unconstitutional because it violated the due process requirements of the Fourteenth Amendment. Id. at 227, 78 S.Ct. 240. The Los Angeles ordinance required people previously convicted of a felony to register with the chief of police. Id. If the person remained in Los Angeles for more than five days without registering, the person was deemed to have violated the registration law and was subject to criminal penalties. Id. at 227, 78 S.Ct. 240.
The defendant in the case had lived in Los Angeles for seven years and the Court "assume[d] that [she] had no actual knowledge of the requirement that she register under this ordinance, as she offered proof of this defense which was refused." Id. The Court recognized that lawmakers had "wide latitude ... to declare an offense and to exclude elements of knowledge and diligence from its definition." Id. at 228, 78 S.Ct. 240. Although the Court recognized the legal maxim that "ignorance of the law will not excuse," it also stressed that due process places limits on the exercise of this maxim. Id. The Court distinguished the registration statute because it dealt with "conduct that is wholly passivemere failure to register." Id. The Court noted that in such circumstances notice of the requirements to register was essential to the concept of due process. Id. ("Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act.").
Ultimately, the Court held that where there is no notice of the duty to register, due process does not allow a conviction for failing to register:
We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. As Holmes wrote in The Common Law, "A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear." Id., at 50. Its severity lies in the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it. Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community.
Id. at 229-30, 78 S.Ct. 240. Like the U.S. Supreme Court and the Fourth District, we reach a similar conclusion here.

*518 Constitutional Analysis
We are also obligated to construe statutes in a manner that avoids a holding that a statute may be unconstitutional. In Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320 (1932), this Court listed several canons of construction to be followed in interpreting statutory acts:
(1) On its face every act of the Legislature is presumed to be constitutional; (2) every doubt as to its constitutionality must be resolved in its favor; (3) if the act admits of two interpretations, one of which would lead to its constitutionality and the other to its unconstitutionality, the former rather than the latter must be adopted....
Id. at 323. Hence, even if our analysis in Chicone did not control the answer to the certified question in the instant case, the canons of statutory construction requiring us to interpret the statutes in a way as to avoid any potential constitutional quandaries would require us to interpret the statute in a manner consistent with due process requirements as described in Lambert. Because scienter is often necessary to comport with due process requirements, we ascribe the Legislature with having intended to include such a requirement. Cf. United States v. X-Citement Video, Inc., 513 U.S. 64, 73, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (noting, in case where intent was read into statute to avoid constitutionality problems, "we do not impute to Congress an intent to pass legislation that is inconsistent with the Constitution as construed by this Court").

State's Contention
Reduced to its essence, the State's argument is that the Fourth District should have determined that a violation of the sexual offender registration statutes is a strict liability crime with no intent or mens rea requirement. The State's argument is premised on the assertion that the sexual offender statute is "regulatory" and therefore it should be construed in favor of the public and not the defendant. It is true that the Supreme Court has determined that a certain class of "public welfare offenses" do not require intent. See generally Morissette v. United States, 342 U.S. 246, 255-56, 72 S.Ct. 240, 96 L.Ed. 288 (1952).
However, the Supreme Court has made it clear that intent is less necessary as an element of a public welfare offense because the "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." Id.; see also Francis Bowes Sayre, Public Welfare Offenses, 33 Colum. L.Rev. 55, 72 (1933) (stating that it is a "cardinal principle" of public welfare offenses that the penalty not be severe).[4] In Staples, the Court recognized the limitations on such offenses noting that "the cases that first defined the concept of the public welfare offense almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary." Staples, 511 U.S. at 616, 114 S.Ct. 1793. Thus, the Court determined that "absent a clear statement from Congress that mens rea is not required, we should not apply the public *519 welfare offense rationale to interpret any statute defining a felony offense as dispensing with mens rea." Id. at 618, 114 S.Ct. 1793 (emphasis added).[5] Hence, where harsh penalties apply or there is the potential to punish otherwise law-abiding, well-intentioned citizens for reasonable behavior, the Court is reluctant to impute to Congress the purpose of doing away with the mens rea requirement simply to "ease the prosecutor's path to conviction." See Staples, 511 U.S. at 615, 114 S.Ct. 1793.
We adopted the United States Supreme Court's reasoning from Staples in Chicone. Chicone, 684 So.2d at 742. Therefore, relying on Staples and Chicone, we find that the Fourth District appropriately held that the public welfare offense rationale did not apply to the sexual offender registration statutes, which punish a violation as a third-degree felony, a serious consequence indeed, especially in this case where the defendant was sentenced to six and onehalf years' imprisonment. Giorgetti, 821 So.2d at 422.

Conclusion
We conclude that because the statute contains no expression of any intent to remove knowledge as an element of these offenses, the Fourth District was correct in applying the reasoning of Chicone and the relevant U.S. Supreme Court decisions to construe a knowledge requirement into the statutes. The defendant's alleged illegal conduct in this case was similar to the passive conduct discussed in Lambert, i.e., relocating residences and failing to notify the State within forty-eight hours. Hence, as in Lambert, knowledge is required here to define the wrongful conduct, i.e., the defendant's failure to comply with a statutory requirement. See Carter v. United States, 530 U.S. 255, 269, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (noting that the presumption in favor of scienter requires the court to read mens rea into a statute to separate wrongful conduct from otherwise innocent conduct). In such situations, the due process requirements explained in Lambert would apply if we did not find a knowledge requirement in the statutes. *520 Thus, at a minimum "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under [the sexual offender registration statutes] can stand." Lambert, 355 U.S. at 229, 78 S.Ct. 240. As the Court did in Lambert, we agree that ordinarily moving one's residence would not give rise to the belief that a crime was being committed absent some express knowledge to the contrary.
In numerous decisions, the U.S. Supreme Court has held that knowledge or mens rea holds a unique place within criminal law, and it must be clear that a legislative body intended to dispense with it before courts will assume it is not required. As noted above, this requirement is little more than a reflection that society ordinarily reserves criminal sanctions for acts of intentional misconduct. Moreover, the elimination of scienter from a criminal statute must be done within constitutional constraints. As we stated in Chicone:
Scienter ... is not a mere technicality in the law, but a legal principle which must be observed in order to safeguard innocent persons from being made the victims of unlawful acts perpetrated by others, and of which they have no knowledge. It is a safeguard which must be preserved in the interest of justice so that the constitutional rights of our citizens may be preserved.
Chicone, 684 So.2d at 739 (quoting Frank v. State, 199 So.2d 117, 121 (Fla. 1st DCA 1967)). In this case, the State argued to the jury and the trial court instructed the jury that this was a strict liability offense regardless of guilty knowledge or any intent to violate the statute.[6] Thus, under this argument and legal instruction, Giorgetti could have been convicted even if he had no knowledge of the registration requirement.
For the foregoing reasons, we conclude that the Fourth District was correct in determining that the sexual offender registration statutes include a requirement that the alleged offender knows of the obligation to register and maintain current addresses. Accordingly, we answer the revised certified question in the affirmative and approve the decision of the Fourth District. We direct that a new trial be conducted, during which the State will *521 have the opportunity to demonstrate the defendant's knowledge of the registration requirements and the defendant will have an opportunity to defend that element of the charge.[7]
It is so ordered.
PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.
BELL, J., concurs in result only with an opinion, in which WELLS, J., concurs.
BELL, J., concurring in result only.
I join the majority in answering the rephrased certified question in the affirmative. I do not join in its opinion, however, because I believe that it is unnecessary to rely on Chicone v. State, 684 So.2d 736 (Fla.1996). We need not decide whether the Legislature, in spite of its silence, intended to require a knowledge requirement in the sexual offender registration statutes. Rather, this is one of those rare cases, falling within the ambit of Lambert v. State, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), where the Legislature could not, consistent with the due process clause of the Fourteenth Amendment, omit a knowledge requirement. In order to interpret these statutes in a way that preserves their constitutionality, we must hold that they require "actual knowledge of the duty to register or proof of the probability of such knowledge." Lambert, 355 U.S. at 229, 78 S.Ct. 240.
WELLS, J., concurs.
NOTES
[1] See § 943.0435(4), Fla. Stat. (2000) ("[W]ithin 48 hours after any change in the offender's permanent or temporary residence... the offender shall report in person to a driver's license office...."); § 944.607(9), Fla. Stat. (2000) ("A sexual offender ... who is under the supervision of the Department of Corrections but who is not incarcerated shall... register in the manner provided in s. 943.0435(3), (4), and (5)....").
[2] See § 943.0435(9), Fla. Stat. (2000) ("A sexual offender who does not comply with the requirements of this section commits a felony of the third degree....").
[3] Specifically, the trial court instructed the jury that "[t]he State does not have to prove the elements of intent, nor does the State have to prove the defendant acted with a malicious or wrongful mental attitude." Id.
[4] Although it was written a number of years ago, the Sayre article provides a scholarly analysis of the development of "public welfare offenses," as well as the reasons such offenses, which require no scienter, should be strictly limited. The Supreme Court has also cited this article with approval in several cases. See, e.g., Staples, 511 U.S. at 617, 114 S.Ct. 1793; United States Gypsum Co., 438 U.S. at 442 n. 18, 98 S.Ct. 2864 (citing Sayre for the proposition that strict liability is generally inappropriate when violation can result in imprisonment); Morissette, 342 U.S. at 251 n. 7, 253 n. 11, 255 n. 14, 262 nn. 20-21, 72 S.Ct. 240.
[5] The cases cited by the State in support of the assertion that this is a regulatory statute deal with the designation or registration aspects of the sexual predator act, section 775.21, Florida Statutes (2003), rather than the criminal penalties for violations of the act. See, e.g., Walker v. State, 718 So.2d 217, 218 (Fla. 4th DCA 1998) (stating that sexual predator designation is neither a sentence nor a punishment but simply a status resulting from the conviction of certain crimes); Ortega v. State, 712 So.2d 833, 833 (Fla. 4th DCA 1998) ("[C]ourts have almost universally recognized that the registration provisions in sexual predator statutes are regulatory...."); State v. Carrasco, 701 So.2d 656, 656 (Fla. 4th DCA 1997) (same). The instant case does not involve the "designation" or label of "sexual offender" or the registration requirement, which may be viewed as regulatory; it deals with the penalties for failing to register, which can result in a substantial prison sentence.

Moreover, the State cites the rule of statutory construction that requires a statute enacted for the public benefit to be construed in favor of the public, rather than the defendant. However, the case cited in support of this provision, State v. Hamilton, 388 So.2d 561, 563 (Fla.1980), is a textbook example of the type of criminal offense that the Supreme Court has described as a "public welfare offense." The statute in Hamilton involved water pollution violations. See id. at 562 (analyzing the constitutionality of section 403.161, Florida Statutes (1977)). The penalties for violation of the statute were misdemeanors and were limited to civil penalties or short jail sentences. § 403.161, Fla. Stat. (1977). Notably, the punishments that involved jail sentences also required some proof regarding the defendant's state-of-mindi.e., that the defendant "knowingly" made a false statement or at the very least that the defendant "willfully or negligently" committed the violation. See § 403.161(1)(c), (3)-(4), Fla. Stat. (1977). It suffices to say that Hamilton has no bearing on the issue in this case and the State's reliance on it is misplaced.
[6] The jury instruction that the State did not have to prove knowledge or intent virtually transformed the crime into one of strict liability. Additionally, in its closing arguments the State repeatedly stressed that it did not have to prove anything with regard to whether or not Giorgetti knew he was committing a crime in moving residences without registering:

[T]he Judge will read you a jury instruction that says the State does not have to prove the element of intent, nor does the State have to prove the defendant acted with a malicious or wrongful mental attitude. We're not saying he's a bad guy because he didn't register. The legislature says, do it. If you don't do it, and right on his own document said [sic], if you do not do these this it's a Third Degree Felony....
Now, regarding the instruction saying there is no issue of intent, in other words, I don't have to prove what was in his mind. The legislature said if you are a sexual offender you will not only tell [the Florida Department of Law Enforcement] where you live, you will tell [the Department of Motor Vehicles]. You may not, and we don't know and we can't ask, you may not agree with that statute. You might think that statute is harsh. It's a hard law, why, why, why did you do it? In the end, you can't change it, not today.....
Now, as far as intent, His Honor is going to read you the law. He's going to read you the jury instructions, which are the law, which you must follow them [sic] whether you like them or not.... Intent is notI do not have to prove that he did something maliciously. I do not have to prove that he knew he wasn't registering.
[7] We decline to address the second issue raised by the State, which dealt with the Fourth District's determination that certain testimony constituted an improper comment of Giorgetti's right of silence, as it is beyond the scope of the certified question in this case. See Goodwin v. State, 634 So.2d 157 (Fla. 1994).