968 So.2d 1054 (2007)
David J. SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-230.
District Court of Appeal of Florida, Fifth District.
November 30, 2007.
James S. Purdy, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellee.
*1055 LAWSON, J.
David J. Smith appeals from his conviction and sentence for failure to register as a sex offender. Smith argues that the trial court erred by denying his request to instruct the jury that the State was required to prove that he intentionally, as opposed to knowingly, failed to register. We affirm.
Smith was charged by information with failure of a sexual offender to register his change of address with the Florida Department of Highway Safety and Motor Vehicles, ("DHSMV"), in violation of sections 943.0435(4) and (9), Florida Statutes (2006). The statute gives sex offenders forty-eight hours after any permanent or temporary change of residence to report to a driver's license office to register their new address and obtain a driver's license or identification card. Although the statute does not expressly contain a scienter requirement, the Florida Supreme Court has construed the statute as requiring knowledge of a duty to register. See State v. Giorgetti, 868 So.2d 512 (Fla.2004). The court in Giorgetti reached this result for two reasons.
First, the court relied upon a rule of statutory construction which presumes that the Legislature intended to include a guilty knowledge element in all criminal statutes, absent an express statement to the contrary. Id. at 515-16. This rule of construction has developed from the general common law rule that "guilty knowledge or mens rea was a necessary element in the proof of every crime." Id. at 515.
Second, the court in Giorgetti based its holding on the rule that statutes should be construed in a manner that avoids "constitutional quandaries." Relying on Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), the court found that a statute which required severe criminal sanctions for failing to register would violate the due process clause unless it contained, at a minimum, a requirement that the State prove "`actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply . . . before a conviction . . . can stand.'" Giorgetti, 868 So.2d at 520 (quoting Lambert, 355 U.S. at 229, 78 S.Ct. 240).
At trial, the State established that Smith was released from jail on January 5, 2006, and registered the address of his sister's home on Balboa Street, in Orange County, with the Orange County Sheriff's Office, as his permanent address. Witnesses testified, however, that Smith did not register any address with DHSMV or obtain a new identification card between January 5, 2006 and May 1, 2006. The State also called Smith's sister as a witness. She testified that Smith did not live with her at her Balboa Street home at any time between January 5, 2006 and May 1, 2006.
After the State rested its case, Smith took the witness stand in his own defense. He testified that he did live with his sister at her Balboa Street home beginning immediately after his release from jail in January 2006. Smith conceded that he knew about the registration requirement. According to Smith, he went to a driver's license office to register the Balboa Street address at some point after his release from jail, but was thwarted from registering when a DHSMV employee informed him that he needed to present a copy of his birth certificate before he could get a new Florida identification card. Interestingly, Smith did not testify as to exactly when these events took place, and certainly never testified that he reported to the driver's license office within forty-eight hours after his release from jail. Smith claimed that he retrieved his birth certificate from Georgia as soon as he could, and then returned to register immediately after *1056 securing his birth certificate. At one point, defense counsel asked Smith for "the date that you reported to the Florida Department of Motor Vehicles to obtain that Florida ID card?" Smith responded that it "may have been in April of 2006." Although this testimony may relate to Smith's purported second trip to the driver's license office, with birth certificate in hand, the testimony is unclear as to which of the two alleged trips to the driver's license office Smith claimed to have made in April.
During the charge conference, the State submitted proposed instructions informing the jury that the State had to prove beyond a reasonable doubt that Smith "knowingly failed to report in person to a driver's license office within 48 hours after any change in his permanent or temporary residence." The instructions further explained that "knowingly" means "with actual knowledge of the duty to register or proof of the probability of such knowledge." The defense requested an additional special instruction, reading as follows:
The State must prove beyond a reasonable doubt that Mr. Smith intentionally violated the statute by Failing to Register a change in address within 48 hours of any change of address with the Department of Highway Safety and Motor Vehicles.
Defense counsel explained that they were attempting to convince the jury that Smith timely went to DHSMV to register, but was prevented from completing the registration at that time. He argued that the proposed special instruction was needed to "limit or alleviate any confusion that the jury might have" as to the validity of Smith's story as a defense to the crime charged. The trial judge found that the State's proposed instructions were not confusing, and did not give the requested special instruction.
We agree with Smith's argument that allowing the State to convict a defendant for failure to register a change of address would present a due process concern in a case where the State had itself prevented the defendant from timely registering his or her change of address. The problem in this case, however, was that Smith's testimony  even if believed by the jury  did not support the argument that Smith timely reported to DHSMV. Thus, we find no error with the trial judge's decision to reject the special instruction offered in this case.
Additionally, the special instruction proposed by Smith misstates the law. In our view, the court in Giorgetti interpreted section 943.0435(4), Florida Statutes, as containing a general intent element. Giorgetti, 868 So.2d at 519-20; see also, 21 Am.Jur.2d Criminal Law § 128 (2007) ("`General intent' is the term used to define the requisite mens rea for a crime that has no stated mens rea."). And, "[w]here a particular crime requires only a showing of general intent, the prosecution need not establish that the accused intended the precise harm or precise result which resulted from his acts." 21 Am.Jur.2d Criminal Law § 128 (2007). The instruction given in this case specifically tracked the language required by Giorgetti.
By contrast, we view the proposed instruction as requiring the State to prove specific intent, or that Smith subjectively intended to violate the statute. See 21 Am.Jur.2d Criminal Law § 128 (2007) ("`Specific intent' involves a subjective state of mind."). Clearly, adding a specific intent element to section 943.0435(4), Florida Statutes, would defeat the purpose of the statute. Under that standard, for example, a defendant could avoid criminal liability with testimony that he meant *1057 to register, but simply forgot. For this reason, the special instruction actually proffered below would not have been appropriate, even if Smith's testimony had supported his argued defense. See 21 Am.Jur.2d Criminal Law § 129 ("A court will not imply a mental requirement in a crime when the statutory language cuts against such a result and the policy behind the statute would be defeated.").
AFFIRMED.
PALMER, C.J., and PLEUS, J., concur.