DAVIS, Judge.
 

 Lisa Franzone challenges her conviction and sentence for improper impound of a vehicle on private property. A jury found her guilty of the offense, and the trial court adjudicated her guilty and sentenced her to three years’ probation. Because the trial court erred in denying her motion for judgment of acquittal, we reverse.
 

 Mrs. Franzone is a member of Zoner, LLC, the company that owns and operates George and Sons Towing.
 
 [1]
 
 On the evening of October 22, 2008, Peter Donnantuani attended a Tampa Bay Rays baseball game. Mr. Donnantuani parked his car at a nearby condominium complex where he is not a resident. While he was attending the game, a condominium resident returned home to find Mr. Donnantuani’s car in her assigned parking spot. She called George and Sons Towing to come and remove the vehicle.
 

 After the game, Mr. Donnantuani returned to the parking lot and discovered that his car was missing. For the first time he saw a sign that indicated that vehicles parked in that lot without permission were subject to being towed. He called the number of the towing service listed on the sign and was told that that company did not have the vehicle. He then contacted law enforcement and ultimately learned that his car had been towed by George and Sons. He placed several calls to George and Sons but did not retrieve his vehicle until the next day. It was this delay that served as the basis for Mrs. Franzone’s conviction.
 

 Mrs. Franzone was convicted of violating the terms of section 715.07(2)(a)(l)(a), Florida Statutes (2008), which sets forth the conditions by which a vehicle may be towed from private property without the owner’s consent. Included in those conditions is the requirement that
 

 [a]ny towed or removed vehicle or vessel must be stored at a site within a 10-mile radius of the point of removal.... That site must be open for the purpose of redemption of vehicles on any day that the person or firm towing such vehicle or vessel is open for towing purposes, from 8 a.m. to 6 p.m., and, when closed, shall have prominently posted a sign indicating a telephone number where
 
 the operator of the site
 
 can be reached at all times.
 
 Upon receipt of a telephoned request to open the site to redeem a vehicle or vessel, the operator shall return to the site within 1 hour or she or he will be in violation of this section.
 

 § 715.07(2)(a)(l)(a) (emphasis added). The statute also identifies a violation of section 715.07(2)(a)(l)(a) as a third-degree
 
 *332
 
 felony. § 715.07(5)(b). This is the offense of which Mrs. Franzone was convicted.
 

 At trial, Mrs. Franzone challenged the sufficiency of the State’s evidence by her motion for judgment of acquittal, arguing that the State had failed to establish (1) that she was the operator of George and Sons Towing, (2) that no one was present at the site where the car was located during the time at issue, and (8) that on the night of the incident, Mr. Donnantuani could not prove that he was the rightful person to take possession of the car.
 
 [2]
 
 In denying Mrs. Franzone’s motion for judgment of acquittal, the trial court determined that for purposes of the statute, she was the operator of the towing company because she was “running the business,” she was the person to whom the dispatcher reported, and she actually made the decision the following day to release the car. The court therefore concluded that Mrs. Franzone could be held criminally responsible if the jury determined that a crime had been committed. But the trial court also observed that the evidence presented was so conflicting that the jury may be unable to determine what actually happened that night.
 
 [3]
 

 On appeal, in addition to raising the arguments she made in the motion for judgment of acquittal, Mrs. Franzone challenges the constitutionality of section 715.07(2)(a)(l), arguing that it is vague and that it fails to include a mens rea element. Without reaching the question of constitutionality, we do note the difficulty of applying this statute. The statute requires the operator to return to the site within an hour of receiving a telephonic notification of an owner’s desire to redeem his or her vehicle. However, it does not clearly define the term “operator.” Is the operator the employee who has towed the vehicle, the dispatcher who is answering the telephone, or the owner of the business who, as in this case, may be home in bed when the telephoned request is made?
 

 We conclude that the trial court erred in determining that Mrs. Franzone is the operator of the site where Mr. Don-nantuani’s vehicle was being stored. As a matter of law, Zoner, LLC, d/b/a George and Sons Towing, is the operator contemplated by the statute. Although chapter 715 does not define the term “operator,” section 1.01(15), Florida Statutes (2008), specifically defines “wrecker operator” to be “any person
 
 or firm
 
 regularly engaged for hire in the business of towing or removing motor vehicles.” (Emphasis added.)
 

 The uncontested testimony at trial established that Mrs. Franzone did not personally engage in the business of towing vehicles, i.e., she did not enter into contracts personally to tow vehicles. Rather she followed the procedures established by Florida law to create a separate firm—
 
 *333
 
 Zoner, LLC, d/b/a George and Sons Towing—to engage in such business.
 

 Chapter 608 of the Florida Statutes provides for the creation of limited liability companies like Zoner, LLC. LLCs are separate and distinct from the natural persons who serve as their managers or who are their members by virtue of economic investment.
 
 See
 
 § 608.402(18) (“ ‘Manager’ means a person who is appointed or elected to manage a manager-managed company....”), (21) (“‘Member’ means any person who has been admitted to a limited liability company ... and has an economic interest in [the LLC].”), Fla. Stat. (2008). And an LLC possesses “the same powers as an individual to do all things necessary to carry out its business and affairs.” § 608.404. This includes but is not limited to the power to sue or be sued, enter contracts, conduct business, and purchase and sell real property.
 
 Id.
 
 When chapter 608 is compared to chapter 607 governing corporations, it is obvious that the LLC is comparable to the more traditional business structure of a corporation. Such a business entity, in this case Zoner, LLC, would be the “firm” referred to in the definition of “wrecker operator” found in section 1.01.
 
 Cf.
 
 § 715.07(2)(a)(6) (referencing
 
 “[a]ny person or firm
 
 that tows or removes vehicles”), (2)(a)(7) (referencing
 
 “[a]ny person or firm
 
 towing or removing any vehicles”), (2)(a)(9) (“[N]o release or waiver of any kind which would release
 
 the person or firm
 
 towing the vehicle ... may be required ... as a condition of release of the vehicle ... to its owner.”) (emphasis added). We therefore conclude that the term “operator” as used in section 715.07 applies to the natural person or firm that engages for hire in the business of towing vehicles.
 

 That being said, an officer or employee of a business entity may be held criminally liable if he or she commits or authorizes acts that make up a criminal offense.
 
 See State v. Shouse,
 
 177 So.2d 724, 726 (Fla. 2d DCA 1965);
 
 cf.
 
 § 621.07, Fla. Stat. (2008) (“[A]ny officer, agent, member, manager, or employee of a [professional service] corporation or limited liability company ... shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by that person, or by any person under that person’s direct supervision and control-”).
 
 See generally Stephens v. State,
 
 824 So.2d 190, 192 (Fla. 1st DCA 1975) (“[T]he State could have charged the corporation in the information and/or the defendant, acting in his corporate capacity.”).
 

 However, before determining whether Mrs. Franzone personally is criminally responsible for the acts or omissions of the operator/firm, we must first decide if the State has proven that a crime was even committed. Mrs. Franzone is correct in her contention that the statute itself does not specifically require any mens rea or guilty knowledge on the part of the operator. “At common law, the general rule was that guilty knowledge or mens rea was a required element in the proof of every crime.”
 
 Wegner v. State,
 
 928 So.2d 436, 438 (Fla. 2d DCA 2006). In fact, “because of the strength of the traditional rule that requires mens rea, offenses that require no mens rea are generally disfavored.”
 
 State v. Giorgetti,
 
 868 So.2d 512, 515 (Fla.2004) (emphasis omitted). “Relying on the strength of the traditional rule, we ... have suggested that some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime.”
 
 Staples v. United States,
 
 511 U.S. 600, 606, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (emphasis omitted). Absent such an indication, “we will ordinarily presume that the [legislature intends statutes defining a criminal
 
 *334
 
 violation to contain a knowledge requirement” and will read such a requirement into the statute.
 
 Giorgetti,
 
 868 So.2d at 516;
 
 see also United States v. U.S. Gypsum Co.,
 
 438 U.S. 422, 437, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (“This Court ... has on a number of occasions read a state-of-mind component into an offense even when the statutory definition did not in terms so provide.”).
 

 We also note that we agree with the trial court’s assessment of the testimony presented below; it was conflicting as to who said what to whom and when. However, our review of the record suggests that if the jury chose to believe certain portions of the testimony, there could be a reasonable inference that Mr. Donnantuani did in fact make a request of the dispatcher to redeem his vehicle. An awareness of this request may meet the guilty knowledge element regarding the criminal liability of the operator/firm.
 

 However, it was not Zoner, LLC, that was charged with this third-degree felony, but rather it was Mrs. Franzone personally who was charged with and convicted of a crime. In order for the State to hold Mrs. Franzone, a natural person who is distinct from the operator — Zoner, LLC — criminally responsible, it had to prove that on the night of the incident, she intentionally instructed the employees of George and Sons Towing to refrain from performing the statutorily mandated acts.
 
 Cf. Donald & Bales Exterminating, Inc. v. State,
 
 487 So.2d 78, 80 (Fla. 1st DCA 1986) (“If, as in the case at bar, the crime charged involves guilty knowledge or criminal intent, it is essential in order to substantiate the criminal liability of an officer of the corporation to show that he actually and personally performed the acts which constitute the offense[ ] or that they were done by his direction or permission.” (citing 18B Am. Jur. 2d
 
 Corporations
 
 § 1894 (1985))).
 

 In denying Mrs. Franzone’s motion for judgment of acquittal, the trial court failed to recognize that the State did not charge that Mrs. Franzone was individually responsible for the criminal acts of the LLC. And the State’s evidence failed to demonstrate that Mrs. Franzone was personally provided with any statutorily referenced request by Mr. Donnantuani to redeem his vehicle.
 

 No one testified that Mr. Donnantuani ever spoke directly with Mrs. Franzone. All the witnesses agreed that Mr. Donnan-tuani spoke on more than one occasion with the dispatcher for George and Sons. The actual content of those conversations, however, is in dispute. One version indicated that Mr. Donnantuani demanded that the car be returned to the condominium lot (which is not required by law). Another version was that Mr. Donnantuani advised the dispatcher that he had the necessary money to pay the towing fee but did not have proof of ownership,
 
 [4]
 
 to which the dispatcher replied that the car could not be returned until the next day. A final version was that Mr. Donnantuani had the money and the proof of ownership and was ready to meet with someone from George and Sons in order to redeem the car.
 

 One point that was not in dispute was that over the course of the entire incident Mrs. Franzone was at home and was contacted only twice by the George and Sons dispatcher, Wade Holdshoe. The testimony showed that the only information Mrs.
 
 *335
 
 Franzone received regarding the incident came from Mr. Holdshoe. Accordingly, the information related to Mrs. Franzone by Mr. Holdshoe during those two conversations was the only basis the State had of proving guilty knowledge on the part of Mrs. Franzone. We conclude, however, that Mr. Holdshoe’s testimony is inadequate to establish Mrs. Franzone’s intent. As such, the trial court erred in denying Mrs. Franzone’s motion for judgment of acquittal.
 

 Mr. Holdshoe testified that he talked with Mr. Donnantuani several times and also spoke with other persons who called on Mr. Donnantuani’s behalf. Although Mr. Holdshoe admitted that he understood that Mr. Donnantuani had the cash necessary to redeem the car, he also testified that Mr. Donnantuani continually demanded that the car be returned to the condominium parking lot from which it had been towed — something that George and Sons was not legally required to do. Furthermore, Mr. Holdshoe testified that he advised Mr. Donnantuani that because the car was owned by a leasing company, Mr. Donnantuani would have to show some proof of his right to possess the car as the lessee. According to Mr. Holdshoe, Mr. Donnantuani repeatedly insisted that he did not have to prove anything. Mr. Hold-shoe denied that Mr. Donnantuani or anyone on his behalf ever advised that Mr. Donnantuani had the necessary proof-of-ownership documents and wanted to come and redeem the car.
 

 With respect to his conversations with Mrs. Franzone, Mr. Holdshoe testified that he called her once around midnight and then again at 3:00 a.m. During the first conversation, Mr. Holdshoe told Mrs. Franzone of the towing and Mr. Donnan-tuani’s insistence that the car be returned to the condominium parking lot, as well as Mr. Donnantuani’s assertion that he did not have to prove anything regarding his right to possession of the vehicle. The dispatcher testified that after several calls with Mr. Donnantuani making the same demands, Mr. Donnantuani eventually told him to “just forget it” because he would come to the office the next day to redeem the car. Mr. Holdshoe specifically testified that after that conversation with Mr. Donnantuani, he called Mrs. Franzone at 3:00 a.m. and advised her that Mr. Don-nantuani was going to wait to redeem his vehicle when the office opened the next day.
 

 Based on this information, it was error for the trial court to conclude that the jury could infer that Mrs. Franzone — acting either as the operator contemplated by the statute or as a managing member of Zoner, LLC — had notice that Mr. Donnantua-ni was prepared to redeem the vehicle and that she knowingly refused to meet him within one hour to allow him to recover his car. Without her having this intent, she cannot be convicted of this third-degree felony, either as the operator of George and Sons or as a member of Zoner, LLC. As such, the trial court should have granted Mrs. Franzone’s motion for judgment of acquittal, and we must reverse her judgment and sentence and remand with instructions that she be discharged.
 
 [5]
 

 Reversed and remanded for discharge.
 

 CASANUEVA, C.J., and WALLACE, J., Concur.
 

 [1]
 

 . " 'Member' means any person who has been admitted to a limited liability company as a member in accordance with this chapter and has an economic interest in a limited liability company_" § 608.402(21), Fla. Stat. (2008).
 

 [2]
 

 . Mrs. Franzone’s motion and argument made at the conclusion of the State's case is not in our record. The trial court indicated at the close of evidence that Mrs. Franzone's counsel should repeat his original argument in his second motion for judgment of acquittal because the trial court failed to record the first motion and argument, which had been presented during a sidebar. We conclude that a similar argument was made at the close of the State’s case, and we evaluate the evidence produced by the State in light of these three arguments.
 

 [3]
 

 . Specifically, the trial court observed: ”[T]he jur[ors have] about eight different stories from eight different people that testified, so they’re going to have to sort through it and decide who ... they think is credible. There wasn't anything consistent between any of the witnesses for either of the two sides. So, I mean, it’s a classic credibility call, if they can find anybody they think is credible and decide what that version is as far as the case is concerned.”
 

 [4]
 

 . The George and Sons employee who actually towed the car checked the vehicle identification number and determined that the car was owned by a leasing company. The dispatcher testified that he advised Mr. Donnan-tuani that he would need some identification and proof that he was the lessee of the vehicle before the vehicle could be returned to him.
 

 [5]
 

 . Having resolved this case based on the trial court’s failure to grant the motion for judg
 
 *336
 
 ment of acquittal, we do not address the other issues raised by Mrs. Franzone on appeal.