CANADY, J.
In this case we consider the constitutionality of the provisions of chapter 893, Florida Statutes (2011), the Florida Comprehensive Drug Abuse Prevention and Control Act, that provide that knowledge of the illicit nature of a controlled substance is not an element of any offenses under the chapter but that the lack of such knowledge is an affirmative defense.
Based on its conclusion that section 893.13, Florida Statutes (2011) — which creates offenses related to the sale, manufacture, delivery, and possession of controlled substances — is facially unconstitutional under the Due Process Clauses of the Florida and the United States Constitutions, the circuit court for the Twelfth Judicial Circuit issued an order granting motions to dismiss charges filed under section 893.13 in forty-six criminal cases. The circuit court reasoned that the requirements of due process precluded the Legislature from eliminating knowledge of the illicit nature of the substance as an element of the offenses under section 893.13. On appeal, the Second District Court of Appeal certified to this Court that the circuit court’s judgment presents issues that require immediate resolution by this Court because the issues are of great public importance and will have a great effect on the proper administration of justice throughout the State. We have jurisdiction. See art. V, § 3(b)(5), Fla. Const.
For the reasons explained below, we conclude that the circuit court erred in determining the statute to be unconstitutional. Accordingly, we reverse the circuit court’s order granting the motions to dismiss.
I. BACKGROUND
Section 893.13, part of the Florida Comprehensive Drug Abuse Prevention and Control Act, provides in part that except as otherwise authorized “it is unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance” or “to be in actual or constructive possession of a *415 controlled substance.” § 893.13(l)(a), (6)(a), Fla. Stat. (2011). Depending on the controlled substance involved and the circumstances of the offense, a violation of section 893.13 can be punished as a misdemeanor, a third-degree felony, a second-degree felony, or a first-degree felony. See, e.g, § 893.13(l)(a)(l), (l)(a)(2), (l)(a)(3), (l)(b), Fla. Stat. (2011).
Section 893.13 itself does not specify what mental state a defendant must possess in order to be convicted for selling, manufacturing, delivering, or possessing a controlled substance. In Chicone v. State, 684 So.2d 736 (Fla.1996), this Court addressed whether section 893.13 should be interpreted to include a mens rea — that is, a “guilty mind” — element. In reviewing a conviction for possession of cocaine, this Court determined that “guilty knowledge” was one of the elements of the crime of possession of a controlled substance and that the State was required to prove that Chicone knew he possessed the substance and knew of the illicit nature of the substance in his possession. Id. at 738-41. This Court reasoned that the common law typically required “scienter or mens rea [as] a necessary element in the indictment and proof of every crime” and that the penalties facing defendants convicted under chapter 893, Florida Statutes, were much harsher than the usual penalties for crimes where a knowledge element is not required. Chicone, 684 So.2d at 741. This Court further reasoned that the Legislature “would have spoken more clearly” if it had intended to not require proof of guilty knowledge to convict under section 893.13. Chicone, 684 So.2d at 743.
More recently, in Scott v. State, 808 So.2d 166 (Fla.2002), this Court clarified that the “guilty knowledge” element of the crime of possession of a controlled substance contains two aspects: knowledge of the presence of the substance and knowledge of the illicit nature of the substance. 808 So.2d at 169. In addition, this Court clarified that the presumption of knowledge set out in State v. Medlin, 273 So.2d 394 (Fla.1973), and reiterated in Chicone— that a defendant’s knowledge of the illicit nature of a controlled substance can be presumed from evidence that the defendant had possession of the controlled substance — can be employed only in cases in which the State proves actual, personal possession of the controlled substance. Scott, 808 So.2d at 171-72.
In response to this Court’s decisions, the Legislature enacted a statute now codified in section 893.101, Florida Statutes (2011). Section 893.101 provides in full:
(1) The Legislature finds that the cases of Scott v. State, Slip Opinion No. SC94701 [808 So.2d 166] (Fla.2002)[,] and Chicone v. State, 684 So.2d 736 (Fla.1996), holding that the state must prove that the defendant knew of the illicit nature of a controlled substance found in his or her actual or constructive possession, were contrary to legislative intent.
(2) The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.
(3) In those instances in which a defendant asserts the affirmative defense described in this section, the possession of a controlled substance, whether actual or constructive, shall give rise to a permissive presumption that the possessor knew of the illicit nature of the substance. It is the intent of the Legislature that, in those cases where such an affirmative defense is raised, the jury shall be instructed on the permissive presumption provided in this subsection.
*416 (Emphasis added.) The statute thus expressly eliminates knowledge of the illicit nature of the controlled substance as an element of controlled substance offenses and expressly creates an affirmative defense of lack of knowledge of the illicit nature of the substance. The statute does not eliminate the element of knowledge of the presence of the substance, which we acknowledged in Chicone, 684 So.2d at 739-40, and Scott, 808 So.2d at 169.
Since the enactment of section 893.101, each of the district courts of appeal has ruled that the statute does not violate the requirements of due process. See Harris v. State, 932 So.2d 551 (Fla. 1st DCA 2006); Burnette v. State, 901 So.2d 925 (Fla. 2d DCA 2005); Taylor v. State, 929 So.2d 665 (Fla. 3d DCA 2006); Wright v. State, 920 So.2d 21 (Fla. 4th DCA 2005); Lanier v. State, 74 So.3d 1130 (Fla. 5th DCA 2011).
The United States District Court for the Middle District of Florida recently concluded, however, that section 893.13 is unconstitutional because it does not require sufficient mens rea on the part of the defendant to sustain a conviction. See Shelton v. Sec’y, Dep’t of Corr., 802 F.Supp.2d 1289 (M.D.Fla.2011). First, the Middle District reasoned that to withstand constitutional scrutiny, section 893.13 should have provided lighter penalties, “such as fines or short jail sentences, not imprisonment in the state penitentiary.” Shelton, 802 F.Supp.2d at 1301 (quoting Staples v. United States, 511 U.S. 600, 616, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). Second, the Middle District reasoned that because of the substantial social stigma associated with a felony conviction, a conviction under section 893.13 should require a guilty mind. Shelton, 802 F.Supp.2d at 1302. And third, assuming that a defendant could be convicted under section 893.13 for delivering or transferring a container without being aware of its contents, the Middle District concluded that section 893.13 violates due process by regulating potentially innocent conduct. Shelton, 802 F.Supp.2d at 1305.
Citing Shelton as persuasive — not binding — authority, the circuit court in this case concluded that section 893.13 is facially unconstitutional because it violates the Due Process Clauses of article I, section 9 of the Florida Constitution and the Fourteenth Amendment to the United States Constitution. The circuit court reasoned that the Legislature did not have authority to dispense with a mens rea element for a serious felony crime.
The State now appeals the circuit court’s decision in this Court. The State asserts that section 893.13, as modified by section 893.101, is facially constitutional and that the circuit court therefore erred in granting the motions to dismiss.
II. ANALYSIS
In the following analysis, after acknowledging the applicable standard of review, we first consider the case law that discusses the broad authority of the legislative branch to define the elements of criminal offenses as well as the case law that recognizes that due process ordinarily does not preclude the creation of an offense without a guilty knowledge element. We then examine the limited circumstances in which the absence of a guilty knowledge element has resulted in a holding that the requirements of due process were not satisfied. Finally, we explain our conclusion that sections 893.13 and 893.101 do not violate due process.
“The constitutionality of a statute is a question of law subject to de novo review.” Crist v. Ervin, 56 So.3d 745, 747 (Fla.2011). In considering a challenge to the constitutionality of a statute, this Court is “obligated to accord legislative *417 acts a presumption of constitutionality and to construe challenged legislation to effect a constitutional outcome whenever possible.” Fla. Dep’t of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005) (quoting Fla. Dep’t of Revenue v. Howard, 916 So.2d 640, 642 (Fla.2005)). “[A] determination that a statute is facially unconstitutional means that no set of circumstances exists under which the statute would be valid.” Id.
“Enacting laws — and especially criminal laws — is quintessentially a legislative function.” Fla. House of Representatives v. Crist, 999 So.2d 601, 615 (Fla.2008). “[T]he Legislature generally has broad authority to determine any requirement for intent or knowledge in the definition of a crime.” State v. Giorgetti, 868 So.2d 512, 515 (Fla.2004). We thus have recognized that generally “[i]t is within the power of the Legislature to declare an act a crime regardless of the intent or knowledge of the violation thereof.” Coleman v. State ex rel. Jackson, 140 Fla. 772, 198 So. 84, 86 (1939). “The doing of the act inhibited by the statute makes the crime[,] and moral turpitude or purity of motive and the knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt.” Id.
Given the broad authority of the legislative branch to define the elements of crimes, the requirements of due process ordinarily do not preclude the creation of offenses which lack a guilty knowledge element. This point was recognized long ago in United States v. Balint, 258 U.S. 250, 251, 42 S.Ct. 301, 66 L.Ed. 604 (1922), where the Supreme Court considered the imposition of criminal penalties — fines of up to $2000 or imprisonment for up to five years, or both— under section 9 of the Narcotic Act of 1914 where the indictment “failed to charge that [the defendants] had sold the inhibited drugs knowing them to be such.” The Narcotic Act required “every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away” a substance containing opium or coca leaves to register and pay a tax. Narcotic Act of Dec. 17, 1914, ch. 1, § 1, 38 Stat. 785 (1914). The Narcotic Act prohibited possession of the specified drugs by any unregistered person, subject to certain exceptions — including an exception for persons to whom the drugs “have been prescribed in good faith” by a registered medical professional. Narcotic Act of Dec. 17, 1914, ch. 1, § 8, 38 Stat. 785 (1914). The Act also provided that “possession or control” of the specified drugs “shall be presumptive evidence of a violation” of the statute. Id As recognized by the Supreme Court, the statute did not make “knowledge an element of the offense.” Balint, 258 U.S. at 251, 42 S.Ct. 301. Despite the substantial penalty for noncompliance with the Narcotic Act, the Supreme Court declined either to read a mens rea element into the Narcotic Act or to conclude that the lack of such an element in the Narcotic Act was unconstitutional.
The Balint court specifically rejected the argument that “punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law.” Id. at 252, 42 S.Ct. 301. The Supreme Court observed that “the state may in the maintenance of a public policy provide ‘that he who shall do [proscribed acts] shall do them at his peril and will not be heard to plead in defense good faith or ignorance.’ ” Id. at 252, 42 S.Ct. 301 (quoting Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 70, 30 S.Ct. 663, 54 L.Ed. 930 (1910)). The Supreme Court explained that offenses lacking such a knowledge element were commonly “found in regulatory measures *418 in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of crimes as in cases of mala in se.” Id.
The Balint court thus gave effect to the “manifest purpose” of the Narcotic Act— that is, “to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him.” 258 U.S. at 254, 42 S.Ct. 301. The Supreme Court recognized that the statutory purpose was properly based at least in part on “considerations as to the opportunity of the seller to find out the fact and the difficulty of proof of knowledge.” Id.
Since the Supreme Court’s decision in Balint, both the Supreme Court and this Court have repeatedly recognized that the legislative branch has broad discretion to omit a mens rea element from a criminal offense. For example, in Staples, which reviewed a federal law criminalizing the unregistered possession of certain automatic firearms that did not expressly include or exclude a mens rea element, the Supreme Court explained that whether or not a criminal offense requires proof that a defendant knew of the illegal nature of his act “is a question of statutory construction” and that the “definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute.” 511 U.S. at 604, 114 S.Ct. 1793 (quoting Liparota v. United States, 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)). Similarly, in United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), and United States v. International Minerals & Chemical Corp., 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971), the Supreme Court rejected the view that due process required that mens rea elements be read into public safety statutes regulating the possession of unregistered firearms and the shipping of corrosive liquids.
Likewise in State v. Gray, 435 So.2d 816 (Fla.1983), this Court determined that the district court erred by construing a witness tampering statute to include scienter and intent elements, explaining:
The problem with the district court’s analysis is its failure to recognize that unless the law in question directly or indirectly impinges on the exercise of some constitutionally protected freedom, or exceeds or violates some constitutional prohibition on the power of the legislature, courts have no power to declare conduct innocent when the legislature has declared otherwise. Ah Sin v. Wittman, 198 U.S. 500, 25 S.Ct. 756, 49 L.Ed. 1142 (1905).
It is within the power of the legislature to declare conduct criminal without requiring specific criminal intent to achieve a certain result; that is, the legislature may punish conduct without regard to the mental attitude of the offender, so that the general intent of the accused to do the act is deemed to give rise to a presumption of intent to achieve the criminal result. The legislature may also dispense with a requirement that the actor be aware of the facts making his conduct criminal. A recent decision from the district court of appeal has recognized these principles. State v. Oxx, 417 So.2d 287 (Fla. 5th DCA 1982).
The question of whether conviction of a crime should require proof of a specific, as opposed to a general, criminal intent is a matter for the legislature to determine in defining the crime. The elements of a crime are derived from the statutory definition. There are some authorities to the effect that infamous *419 crimes, crimes mala in se, or common-law crimes may not be defined by the legislature in such a way as to dispense with the element of specific intent, but these authorities are suspect.
Gray, 435 So.2d at 819-20 (some citations omitted).
In a limited category of circumstances, the omission of a mens rea element from the definition of a criminal offense has been held to violate due process. A salient example of such circumstance is found in the Supreme Court’s decision in Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), which addressed a Los Angeles municipal code provision requiring that felons present in the municipality for more than five days register with law enforcement. The code provision applied to “a person who has no actual knowledge of his duty to register.” Id. at 227, 78 S.Ct. 240. In Lambert, the Supreme Court concluded that a legislative body may not criminalize _ otherwise entirely innocent, passive conduct — such as a convicted felon remaining in Los Angeles for more than five days — without sufficiently informing the population of the legal requirement. As a result, the Supreme Court concluded that the registration requirement then at issue could be enforced only when the defendant was aware of the ordinance. Still, the Supreme Court emphasized that in a situation where the lawmaking body seeks to prohibit affirmative acts, it can do so without requiring proof that the actor knew his or her conduct to be illegal:
We do not go with Blackstone in saying that “a vicious will” is necessary to constitute a crime, for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition. But we deal Jjere with conduct that is wholly passive — mere failure to register. It is unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed. The rule that “ignorance of the law will not excuse” is deep in our law, as is the principle that of all the powers of local government, the police power is “one of the least limitable.”
Lambert, 355 U.S. at 228, 78 S.Ct. 240 (emphasis added) (citations omitted).
In Giorgetti, this Court followed the holding of Lambert in invalidating Florida’s sexual offender registration statutes. Because the defendant’s alleged illegal conduct “was similar to the passive conduct discussed in Lambert, i.e., relocating residences and failing to notify the State within forty-eight hours,” we determined that “as in Lambert, knowledge is required here to define the wrongful conduct, i.e., the defendant’s failure to comply with a statutory requirement.” Giorgetti, 868 So.2d at 519.
The Supreme Court has also concluded that the omission of a scienter element from the definition of a criminal offense can result in a due process violation where the omission results in criminalizing conduct protected by the First Amendment of the United States Constitution. For example, in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), the Supreme Court determined that a scienter element was required in an ordinance making it illegal for any person to have in his possession any obscene or indecent writing in a place of business where books are sold. The Supreme Court reasoned that without such an element, the ordinance would cause a bookseller “to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as *420 well as obscene literature.” Id. at 153, 80 S.Ct. 215. Similarly, in United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), the Supreme Court construed the modifier “knowing” in the Protection of Children Against Sexual Exploitation Act to apply to the element of the age of the performers. The Supreme Court explained that because nonobscene, sexually explicit materials involving persons over the age of seventeen are protected by the First Amendment, “a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts,” and it was “therefore incumbent upon [the court] to read the statute to eliminate those doubts so long as such a reading is not plainly contrary to the intent of Congress.” Id. at 78, 115 S.Ct. 464.
In Schmitt v. State, 590 So.2d 404, 413 (Fla.1991), we concluded that “a due process violation occurs if a criminal statute’s means is not rationally related to its purposes and, as a result, it criminalizes innocuous conduct.” Specifically, we considered a statute prohibiting the possession of a depiction involving “actual physical contact with a [minor] person’s clothed or unclothed genitals, pubic area, buttocks, or if such person is a female, breast.” Id. at 408 (quoting § 827.071(1)(g), Fla. Stat. (1987)). We held that the statute violated due process because it criminalized family photographs of innocent caretaker-child conduct, such as bathing the child or changing a diaper. While Florida’s civil child abuse statute expressly excluded from the definition of sexual child abuse physical contact that “may reasonably be construed to be a normal caretaker responsibility,” the criminal statute declared depictions of such acts to be a felony. Id. at 413 (quoting § 415.503(17)(d), Fla. Stat. (1987)).
In In re Forfeiture 1969 Piper Navajo, 592 So.2d 233, 235 n. 6 (Fla.1992), this Court concluded that the Legislature could not authorize the confiscation of airplanes based on the presence of additional fuel capacity — where extra fuel capacity was not “the exclusive domain of drug smugglers.” This Court reasoned that such an action would impinge on protected property rights. Id. at 236. Similarly, this Court determined that statutes criminalizing the possession of embossing machines, lawfully obtained drugs not in their original packaging, and spearfishing equipment — without requiring proof of intent to use the items illegally — were not reasonably related to achieving a legitimate legislative purpose and interfered with the property rights of individuals who used those items for noncriminal purposes. See State v. Saiez, 489 So.2d 1125 (Fla.1986); State v. Walker, 444 So.2d 1137 (Fla. 2d DCA), aff'd, 461 So.2d 108 (Fla.1984) (adopting district court of appeal’s opinion); Delmonico v. State, 155 So.2d 368 (Fla.1963).
The provisions of chapter 893 at issue in the present case are readily distinguishable from those cases in which definitions of particular criminal offenses were found to violate the requirements of due process. The rationale for each of those cases is not applicable to the context of controlled substance offenses under Florida law.
Sections 893.13 and 893.101 do not trigger the concern raised in Lambert and Giorgetti. The statutes do not penalize without notice a “failure to act [that absent the statutes] otherwise amounts to essentially innocent conduct,” such as living in a particular municipality without registering. Giorgetti, 868 So.2d at 517 (quoting Oxx, 417 So.2d at 290). Rather than punishing inaction, to convict under section 893.13 the State must prove that the defendant engaged in the affirmative act of selling, *421 manufacturing, delivering, or possessing a controlled substance. The controlled substance statutes are further distinguishable from the statutes in Lambert and Giorget-ti — which would impose criminal liability for failing to register regardless of the defendant’s knowledge of the regulation and his or her status — because in section 893.101 the Legislature has expressly provided that a person charged under chapter 898 who did not have knowledge of the illegality of his or her conduct may raise that fact as an affirmative defense.
Furthermore, sections 893.13 and 893.101 — unlike the provisions we invalidated in Schmitt, 1969 Piper Navajo, Saiez, Walker, and Delmonico — are rationally related to the Legislature’s goal of controlling substances that have a high potential for abuse, and the statutes do not interfere with any constitutionally protected rights. The Legislature tailored section 893.13 to permit legitimate, medical uses of controlled substances but to prohibit non-medically necessary uses of those substances. Section 893.13 expressly excludes from criminal liability individuals who possess a controlled substance that “was lawfully obtained from a practitioner or pursuant to a valid prescription,” § 893.13(6)(a), Fla. Stat. (2011), and the following persons and entities who handle medically necessary controlled substances as part of their profession: pharmacists, medical practitioners, hospital employees, government officials working in their official capacity, common carriers, pharmaceutical companies, and the employees and agents of the above, § 893.13(9), Fla. Stat. (2011).
Because there is no legally recognized use for controlled substances outside the circumstances identified by the statute, prohibiting the sale, manufacture, delivery, or possession of those substances without requiring proof of knowledge of the illicit nature of the substances does not criminalize innocuous conduct or “impinge[ ] on the exercise of some constitutionally protected freedom.” Gray, 435 So.2d at 819. Because the statutory provisions at issue here do not have the potential to curtail constitutionally protected speech, they are materially distinguishable from statutes that implicate the possession of materials protected by the First Amendment, such as those at issue in Smith and X-Citement Video. There is no constitutional right to possess contraband. “[A]ny interest in possessing contraband cannot be deemed ‘legitimate.’ ” Illinois v. Caballes, 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (quoting United States v. Jacobsen, 466 U.S. 109, 123, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).
Nor is there a protected right to be ignorant of the nature of the property in one’s possession. See Turner v. United States, 396 U.S. 398, 417, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) (“ ‘Common’ sense tells us that those who traffic in heroin will inevitably become aware that the product they deal in is smuggled, unless they practice a studied ignorance to which they are not entitled.”) (emphasis added) (citation and footnotes omitted); Balint, 258 U.S. at 254, 42 S.Ct. 301 (upholding as constitutional a statute that “require[d] every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute”). Just as “common sense and experience” dictate that a person in possession of Treasury checks addressed to another person should be “aware of the high probability that the checks were stolen,” a person in possession of a controlled substance should be aware of the nature of the substance as an illegal drug. Barnes v. United States, 412 U.S. 837, 845, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Because controlled substances are valuable, common sense indicates that they are generally handled with care. As a result, possession without awareness of the *422 illicit nature of the substance is highly unusual. See United States v. Bunton, No. 8:10-cr-327-T-30EAJ, 2011 WL 5080307, at *8 (M.D.Fla. Oct. 26, 2011) (“It bears repeating that common sense dictates, given the numerous drug polic[i]es that are designed to discourage the production, distribution, and consumption of illegal drugs, that one can reasonably infer guilty knowledge when a defendant is in possession of an illegal substance and knows of the substance’s presence. In other words, having knowledge of the presence of the substance should alert the defendant to the probability of strict regulation.”).
' Any concern that entirely innocent conduct will be punished with a criminal sanction under chapter 893 is obviated by the statutory provision that allows a defendant to raise the affirmative defense of an absence of knowledge of the illicit nature of the controlled substance. In the unusual circumstance where an individual has actual or constructive possession of a controlled substance but has no knowledge that the substance is illicit, the defendant may present such a defense to the jury.
Because we conclude that the Legislature did not exceed its constitutional authority in redefining section 893.13 to not require proof that the defendant knew of the illicit nature of the controlled substance, we likewise conclude that the Legislature did not violate due process by defining lack of such knowledge as an affirmative defense to the offenses set out in chapter 893. The Legislature’s decision to treat lack of such knowledge as an affirmative defense does not unconstitutionally shift the burden of proof of a criminal offense to the defendant.
In Patterson v. New York, 432 U.S. 197, 207, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Supreme Court concluded that the New York legislature’s decision to define extreme emotional disturbance as an affirmative defense to the crime of murder was permissible because the defense did “not serve to negative any facts of the crime which the State is to prove in order to convict of murder” but instead “constitute[d] a separate issue on which the defendant is required to carry the burden of persuasion.” The Supreme Court explained that because the fact constituting the affirmative defense was not logically intertwined with a fact necessary to prove guilt, the affirmative defense did not “unhinge the procedural presumption of innocence.” Id. at 211 n. 13, 97 S.Ct. 2319 (quoting People v. Patterson, 39 N.Y.2d 288, 383 N.Y.S.2d 573, 347 N.E.2d 898, 909 (1976) (Breitel, C.J., concurring), aff'd, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)).
This Court applied similar reasoning in State v. Cohen, 568 So.2d 49 (Fla.1990). In Cohen, this Court reviewed a statutory affirmative defense to Florida’s witness-tampering statute. The affirmative defense required Cohen to prove that he engaged in lawful conduct and that his sole intention was to encourage, induce, or cause the witness to testify truthfully. Id. at 51. This Court concluded that the supposed affirmative defense was merely an illusory affirmative defense. This Court explained that the purported affirmative defense was illusory because Cohen could not logically both raise the affirmative defense and concede the elements of the crime. By attempting to prove the affirmative defense that he had acted lawfully with the intent to encourage the witness to testify truthfully, Cohen would necessarily negate the State’s theory that he illegally contacted a witness, as opposed to conceding the State’s charges. Thus, the purported affirmative defense unconstitutionally placed a burden on Cohen — as a *423 defendant — to refute the State’s case. Id. at 52.
Here, the Legislature’s decision to make the absence of knowledge of the illicit nature of the controlled substance an affirmative defense is constitutional. Under section 893.13, as modified by section 893.101, the State is not required to prove that the defendant had knowledge of the illicit nature of the controlled substance in order to convict the defendant of one of the defined offenses. The conduct the Legislature seeks to curtail is the sale, manufacture, delivery, or possession of a controlled substance, regardless of the defendant’s subjective intent. As a result, the defendant can concede all elements of the offense but still coherently raise the “separate issue,” Patterson, 432 U.S. at 207, 97 S.Ct. 2319, of whether the defendant lacked knowledge of the illicit nature of the controlled substance. The affirmative defense does not ask the defendant to disprove something that the State must prove in order to convict, but instead provides a defendant with an opportunity to explain why his or her admittedly illegal conduct should not be punished. “It is plain enough that if [the sale, manufacture, delivery, or possession of a controlled substance] is shown, the State intends to deal with the defendant as a [criminal] unless he demonstrates the mitigating circumstances.” Patterson, 432 U.S. at 206, 97 S.Ct. 2319. Thus, the affirmative defense does not improperly shift the burden of proof to the defendant.
III. CONCLUSION
In enacting section 893.101, the Legislature eliminated from the definitions of the offenses in chapter 893 the element that the defendant has knowledge of the illicit nature of the controlled substance and created the affirmative defense of lack of such knowledge. The statutory provisions do not violate any requirement of due process articulated by this Court or the Supreme Court. In the unusual circumstance where a person possesses a controlled substance inadvertently, establishing the affirmative defense available under section 893.101 will preclude the conviction of the defendant. Based on the foregoing, we conclude that the circuit court erred in granting the motions to dismiss and we reverse the circuit court’s order.
It is so ordered.
POLSTON, C.J., and LABARGA, J., concur.
PARIENTE, J., concurs in result with an opinion.
LEWIS, J., concurs in result.
QUINCE, J., dissents.
PERRY, J., dissents with an opinion.