CLARK, J.
All Saints Early Learning and Community Care, Inc., (“All Saints”) appeals the amended final order of the Department of Children and Families (“DCF”) finding that on December 21, 2010, All Saints violated a licensing standard under section 402.305(l)(a), Florida Statutes, as implemented by rule 65C-22.001(5)(a), Florida Administrative Code, by failing to provide the required level of supervision of a child in its care. DCF imposed an administrative fine of $500.00. All Saints’ license was not revoked or suspended. See § 402.310(l)(a)l., Fla. Stat. Because the violation of the supervision standard was a “class I violation” pursuant to rule 65C-22.010(l)(d), Florida Administrative Code, All Saints’ Gold Seal Quality Care designa *975 tion under section 402.381(4), Florida Statutes, was terminated. All Saints contends on appeal that DCF misinterpreted rule 65C-22.001(5)(a) by holding All Saints “strictly liable” for the isolated negligent act of All Saints’ employees and that DCF exceeded its authority by imposing the administrative disciplinary action against All Saints.
The scope and standards for our review are governed by section 120.68, Florida Statutes. Pursuant to section 120.68(8), final agency action must be affirmed unless this Court finds a ground or grounds to set it aside under section 120.68(7)(a)-(7)(e). Sanders v. Dep’t of Children & Families, 118 So.3d 899 (Fla. 1st DCA 2013); Miami-Dade Cnty. v. Dep’t of Cmty. Affairs, 54 So.3d 633 (Fla. 1st DCA 2011). The material facts in this case were stipulated by the parties, and the administrative proceedings were conducted under section 120.57(2), governing procedures for hearings not involving disputed issues of material fact. Appellant does not assert any material error in procedure or failure by DCF to follow prescribed procedure. Thus, the statutory ground most closely aligned with Appellant’s argument on appeal is section 120.68(7)(d): “The agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action.”
The stipulated facts were accepted and adopted by the hearing officer’s recommended order and approved by DCF’s amended final order. The facts were thus established that during the late morning on December 21, 2010, a class of eight children, ranging in age between 18 and 24 months, was using All Saints’ outdoor play area. For this age group, the DCF staff-to-child ratio requirement is one teacher per six children. Initially, two All Saints’ teachers were supervising the group, but just after 11 a.m., one of the teachers left the playground and returned indoors to attend to other duties. All Saints’ security camera video for this point in time shows one of the children working the gate open and three children leaving the playground to retrieve a ball which had gone over the fence. The video also shows two of those children re-entering the playground with the ball. Another of All Saints’ security videos shows the third child leaving the All Saints area, wandering past the parking lot and towards Hendricks Avenue. The parties stipulated that at this point, All Saints’ staff were unaware that any children had opened the gate, exited the playground, and re-entered the playground. It was also not contested that Hendricks Avenue is a heavily trafficked, four-lane divided thoroughfare, part of State Road 13 and designated by the City of Jacksonville as a “Principal Arterial” roadway. The parties also stipulated that the third child was discovered in the median of Hendricks Avenue by a stranger. This location required the child to cross two lanes of traffic. The person returned the child, unharmed, to All Saints after an absence of approximately ten minutes. No one on All Saints’ staff or administration was aware of the child’s absence until his fortunate return.
The stipulated facts also described All Saints’ remedial actions after the incident, including the immediate firing of one teacher and the eventual firing of the other teacher on the playground that day; reprimands of the other staff; reinforcement of the gate system, which was already in compliance with DCF standards, to now exceed DCF’s standards; provision of care-givers with two-way radios; and other remedial measures which exceeded DCF requirements.
DCF filed an administrative complaint against All Saints, alleging the facts of the incident and notifying All Saints, as a li *976 censee under chapter 402, Florida Statutes, that the failure in supervision by staff was a “class I violation” impacting All Saints’ Gold Seal designation under section 402.281, Florida Statutes, and that DCF intended to impose a fine pursuant to section 402.301. All Saints requested a hearing for the purpose of presenting legal argument on the stipulated facts. After the hearing, and after submitting a proposed recommended order to all parties, the hearing officer filed the Recommended Order on May 10, 2013. In addition to the stipulated facts adopted in the Recommended Order, the hearing officer added a finding that “[b]ut for the quick actions of a passerby, the child could have been killed, kidnapped, or seriously injured.”
The hearing officer’s conclusions of law referred to section 402.310(1) for the agency’s authority to impose an administrative fine up to $500 for a violation which “could or does cause death or serious harm” and referred to rule 65C-22.001(5)(a) and CF-FSP Form 5316, deeming a violation of supervision standards a “class I violation.” The hearing officer’s Conclusion of Law in paragraph 28 was that All Saints had committed a class I violation “when it allowed the child, T., to leave the facility unsupervised as described in the findings of fact.” The Recommended Order advised DCF to fine All Saints $500.00 for the failure in direct supervision and enter a final order revoking All Saints’ Gold Seal Quality Care designation under section 402.281.
All Saints filed a written statement challenging the grounds for the administrative penalties and the agency addressed these objections in its amended final order. See § 120.57(2)(a), Fla. Stat. Addressing All Saints’ challenge to DCF’s holding All Saints responsible, as the licensee, for the actions or failures of its employees, the agency head stated:
Respondent, in effect, argues it should not be sanctioned for its employees’ violation of the applicable direct supervision standard. These exceptions are rejected. ... Child care facilities exist for the purpose of, and are charged with, providing safe and appropriate supervision of children too young to care for themselves. The actions of the staff are the actions of the facility. A child care facility cannot insulate itself from a sanction by attributing standards violations to the facility staff. Respondent’s exceptions rely on a line of cases related to enforcement of alcoholic beverage sale restrictions. These cases are neither controlling nor persuasive in the child care context.
Dep’t of Children & Families v. All Saints Early Learning & Cmty. Care Ctr., Case No. 12-099CF, Amended Final Order, p. 2.
On appeal, All Saints maintains its position, consistent from the beginning of the administrative proceedings, that DCF is unauthorized to penalize All Saints for violations by its employees, so long as All Saints has implemented the procedures, policies, and physical facility standards required by chapter 402 and DCF’s administrative rules. All Saints vigorously contends that subjecting it to administrative sanctions under the stipulated facts of this case exceeds the delegated legislative authority of DCF to regulate child care facilities and illegally imposes “strict liability” upon the licensee for the inattention of its employees which unfortunately resulted in a potentially life-threatening danger to a child in the facility’s care. All Saints relies on cases where licensing penalties were reversed when the regulating agencies erroneously attributed the actions of employees to the licensee. See Pic N’ Save Cent. Fla., Inc. v. Dep’t of Bus. Regulation, 601 So.2d 245 (Fla. 1st DCA 1992) (reversing fine and suspension of license for failure to prevent employees from making three un *977 der-age liquor sales; license to engage in occupation not to be removed except for misconduct personal to licensee); Surf Attractions, Inc. v. Dep’t of Bus. Regulation, 480 So.2d 1354 (Fla. 1st DCA 1985) (reversing fines imposed upon alcohol licensee convenience store operator; illegal sale of alcohol was approved by corporate officer of licensee but no proof of lack of due diligence by the corporation); Federgo Disc. Ctr. v. Dep’t of Prof'l Regulation, 452 So.2d 1063 (Fla. 3d DCA 1984) (reversing revocation of store owners’ community pharmacy permits based on violations by employee licensed pharmacist; owners incorrectly held responsible for breach of duty imposed on licensed employee).
The cases relied on by All Saints are not controlling here because the regulated activities and statutes governing those industries are not comparable to chapter 402 and the operation of child care facilities. The stated legislative intent in sections 402.26[1] and 402.301[2], and the definitions set out in section 402.302, clearly establish that a licensed child care facility is responsible not only for administration of the facilities in compliance with the standards set out by statute and administrative rule, but is ultimately responsible for the care, protection, and supervision of the children entrusted to it. It follows that as licensees they are subject to administrative sanctions for employees’ lapses in supervision at the licensed facility which endanger a child.
To carry out the legislative directive in section 402.301(l)(a) to establish standards addressing the health and safety for the children in daycare, DCF has promulgated rule 650-22.001(5), which provides:
(5) Supervision.
(a) Direct supervision means actively watching and directing children’s activities within the same room or designated outdoor play area, and responding to the needs of each child. Child care personnel at a facility must be assigned to provide direct supervision to a specific group of children, and be present with that group of children at all times. When caring for school-age children, child care personnel shall remain responsible for the supervision of the children in care, shall be capable of responding to emergencies, and are accountable for children at all times, including when children are separated from their groups.
*978 Appellant’s attempt to avoid the administrative fíne and consequences to its Gold Seal designation by blaming the incident on its employees is without merit, considering the statutory definitions of “child care personnel.” Appellant argues the phrase “child care personnel shall remain responsible for the supervision of children in care” insulates All Saints from responsibility for mistakes by staff which compromise supervision of the children entrusted to the facility. However, section 402.302(3), Florida Statutes, defines “child care personnel” as “all owners, operators, employees, and volunteers working' in a child care facility.” Accordingly, licensed owners and operators are not only required to administer their licensed day care facilities in compliance with the standards set out by statute and administrative rule, but as licensees they are also subject to administrative sanctions for employees’ lapses in supervision at the licensed facility which endanger a child.
Common law legal theories and causes of action for civil tort lawsuits, such as strict liability, vicarious liability, and re-spondeat superior, are not directly applicable to these administrative licensing and regulatory proceedings, which are established and governed by statute.[3] DCF’s cause of action is set out in section 402.310, Florida Statutes, and the process due in these administrative proceedings is codified in sections 120.569, 120.57, 120.60, and 120.68, Florida Statutes. All Saints’ attempt to delegate its responsibility for the safety of the children in its care to the employees who are actually present with the children might be a partial defense against a negligence action for monetary damages, where proximate causation, intervening causes, and comparative negligence apply. However, DCF’s administrative regulatory proceedings are not negligence lawsuits. The legislature clearly intended All Saints, as a licensed child care facility, to be ultimately responsible for the safety of the children in its care.[4]
We find that DCF properly held All Saints responsible for the incident and, after considering the factors listed in section 402.310(l)(b), imposed an administrative fine as authorized by section 402.310(l)(a)l. We further find that DCF’s Amended Final Order does not constitute an erroneous interpretation of law under section 120.68(7)(e). All Saints may not delegate its responsibilities under the licensing statutes to its employees or avoid administrative sanctions for an incident which constituted a serious danger to three children under its care. DCF’s amended final order did not exceed its statutory authority or deny All Saints the process it was due under sections 120.569 *979 and 120.57(2), Florida Statutes. The facts of the dangerous incident were stipulated to by the parties and constituted exactly the type of situation the regulatory scheme is designed to prevent. The consequences to All Saints’ Gold Seal designation resulting from the administrative disciplinary action did not violate due process and comported completely with section 402.281.
AFFIRMED.
OSTERHAUS, J., concurs; BENTON, J., concurs in result.

. Section 402.26 provides in pertinent part:
402.26. Child care; legislative intent—
(1) The Legislature recognizes the critical importance to the citizens of the state of both safety and quality in child care.
[[Image here]]
(3) To protect the health and welfare of children, it is the intent of the Legislature to develop a regulatory framework that promotes the growth and stability of the child care industry and facilitates the safe physical, intellectual, motor, and social development of the child.
(4) It is also the intent of the Legislature to promote the development of child care options in the private sector and disseminate information that will assist the public in determining appropriate child care options.

. Section 402.301 provides in part:
402.301. Child care facilities; legislative intent and declaration of purpose and policy — It is the legislative intent to protect the health, safety, and well-being of the children of the state and to promote their emotional and intellectual development and care. Toward that end:
(1) It is the purpose of ss. 402.301-402.319 to establish statewide minimum standards for the care and protection of children in child care facilities, to ensure maintenance of these standards, and to approve county administration and enforcement to regulate conditions in such facilities through a program of licensing.

. "Strict liability" is disfavored and used sparingly in civil and criminal cases due to the potential for violation of a defendant's due process rights when the requirement to prove intent and even knowledge of wrongdoing is dispensed with. The mens rea concerns discussed in State v. Adkins, 96 So.3d 412 (Fla.2012), pertaining to criminal prosecution for drug possession regardless of intent and the validity of "strict liability offenses,” is not applicable to these administrative regulatory proceedings. Likewise, the "strict tort liability" in products liability actions such as West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla.1976) is not at issue here.

. Although not applicable in the context of this case, to follow All Saints’ lead in using civil lawsuit terminology, the Legislative intent expressed in the statutes governing these licensed child care facilities suggests that the licensee is vicariously liable (via respondeat superior) for the actions or inaction of its employees in carrying out child care responsibilities. Analogizing to another negligence term — negligence per se — the dangerous situation presented in this case was just the sort of harm sections 402.305 and 402.310 were enacted to prevent and address.