DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LAVOSKI E. JACKSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-0819

[April 16, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Rebecca Ivy White, Judge; L.T. Case No. 472023CF000472A.

Luke Newman of Luke Newman, P.A., Tallahassee, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Luke R. Napodano, Senior Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant, Lavoski E. Jackson, appeals his conviction and sentence for trafficking in a substitute cathinone, namely Dimethylpentylone. He contends that the substance of which he was convicted of possessing is not listed in section 893.03(1)(c)191., Florida Statutes (2023), under which he was charged. He further contends that his sentence is unconstitutional pursuant to *Erlinger v. United States*, 602 U.S. 821 (2024), because not all of the findings required to sentence him as a habitual offender were found by the jury.

Because section 893.03(1)(c)191. lists substituted cathinones as a controlled substance, and expert testimony proved that the substances possessed by appellant were substituted cathinones, we affirm his conviction. As to his sentence, we also affirm, because even if *Erlinger* applies, we conclude the lack of submission of each factor to a jury is harmless error.

## Facts

The State charged appellant with trafficking in 10 or more, but less than 200, grams of phenethylamines, or substituted cathinones, citing section 893.03(1)(c)191., Florida Statutes (2023), as well as two other offenses that were nolle prossed. The case proceeded to a jury trial. Before trial, the State filed a notice of intent to seek an enhanced sentence as a habitual felony offender ("HFO").

At trial, detectives testified how they discovered what appeared to be a controlled substance in baggies and appellant's presence around the drugs. A field test came back positive for cocaine and another substance. An expert from the Indian River Crime Lab testified that he ran tests on the substance. Based on the test results and his training, he determined that the baggies contained Dimethylpentylone, which is a substituted cathinone. The expert explained, without objection:

> So, a substituted cathinone is a chemical that is similar to MDMA or Ecstasy. Um, in the Florida Statute, the way the statute is written it controls what I will call a base molecule that is a substituted cathinone. So, there's a small portion of the molecule that is controlled and then there is different criteria that has to be met for many different types of drugs to fall under what I'll call that umbrella category of a substituted cathinone.

> Now, Dimethylpentylone is one of those substances that meets all of the criteria in the Florida Statute to be controlled as a substituted cathinone. Dimethylpentylone isn't in and of itself written in the statute, but it is controlled as a substituted cathinone.

> So, if you can picture it, you have your base molecule and then what you can do is you can change different parts of it chemically, which make different substituted cathinones. Dimethylpentylone is just one example.

The expert also testified as to the weight of the substance, after which the State rested.

Appellant moved for a judgment of acquittal ("JOA"), arguing that Dimethylpentylone was not a controlled substance under Florida law. The trial court found that although Dimethylpentylone was not a listed substance under section 893.03(1)(c)191., the statute listed "substituted

2

cathinones," and the expert had testified that Dimethylpentylone was a substituted cathinone. Therefore, the court held the State had presented a prima facie case that appellant had knowingly possessed between 10 and 200 grams of a substituted cathinone. The court denied the motion for JOA, and the case was submitted to the jury. The jury found appellant guilty of possession of more than ten grams of "phenethylamines, to wit: substituted cathinone."

At sentencing, the State sought to have appellant sentenced as an HFO. The State called the Okeechobee County Sheriff Office's crime scene technician and evidence custodian. She identified appellant in court as the person from whom she took fingerprints. The State introduced, without objection, five certified judgments and sentences, which included the offenses and conviction dates. Each of the five certified judgments had a fingerprint card, and the technician testified that each set of fingerprints matched appellant's fingerprints.

The State also introduced, without objection, a Crime and Time Report from the Department of Corrections, reflecting that appellant had most recently been released from prison on November 1, 2020, after serving his sentence for possession of a firearm by a convicted felon. The Crime and Time Report had a fingerprint card, which the technician testified matched appellant's fingerprints. The State also introduced, without objection, a letter from the State of Florida Office of Executive Clemency, reflecting that appellant had not been granted any form of clemency for any of his convictions.

Based on the certified judgment, Crime and Time Report, and the clemency letter, the trial court found that appellant qualified as an HFO. Appellant was sentenced to forty-five years in prison with a three-year mandatory minimum sentence. Appellant filed a timely notice of appeal as to the conviction and sentence.

After filing his notice of appeal, but before any briefs were filed, appellant filed a motion to correct a sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2). Appellant argued that he was entitled to resentencing following the United States Supreme Court decision *Erlinger v. United States*, 602 U.S. 821 (2024), where the Court held that a unanimous jury, rather than a judge, must decide most facts that result in sentence enhancements. *Id.* at 834. The State filed a response, arguing that *Erlinger* should not apply retroactively to appellant's case. Appellant replied that his case was on direct appeal and thus nonfinal, so any application of *Erlinger* would not be retroactive. The trial court found that appellant was requesting to apply *Erlinger* retroactively and denied his

request for resentencing. Appellant raises the denial of his motion to correct his sentence in this appeal.

## Analysis
### Denial of Judgment of Acquittal

Appellant argues that the trial court erred in denying his JOA motion because the statute under which he was charged and convicted,—section 893.03(1)(c)191., Florida Statutes—did not list Dimethylpentylone as a "substituted cathinone," and the statutory description would violate due process by failing to give him notice of the illegality of the substance.

The standard of review for a constitutional claim is de novo. *Davis v. State*, 227 So. 3d 137, 139 (Fla. 4th DCA 2017). The standard of review of the trial court's ruling on a motion for judgment of acquittal is also de novo. *Harris v. State*, 289 So. 3d 962, 965 (Fla. 4th DCA 2020).

Appellant was convicted of trafficking in phenethylamines by virtue of possessing between 10 and 200 grams of Dimethylpentylone, which the expert testified is a substituted cathinone. Section 893.135(1), Florida Statutes (2023), provides:

> (k)1. A person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 10 grams or more of a:
>
> a. . . . substituted cathinone, as described in s. 893.03(1)(c) 191 . . . .
>
> . . . .
>
> commits a felony of the first degree, which felony shall be known as "trafficking in phenethylamines,". . . .

*Id.*

Section 893.03(1), Florida Statutes (2023), enumerates substances classified as Schedule I, which have no accepted medical use in the United States. Specifically, section 893.03(1)(c)191., Florida Statutes (2023), provides:

> (c) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation

4

that contains any quantity of the following hallucinogenic substances or that contains any of their salts, isomers, including optical, positional, or geometric isomers, homologues, nitrogen-heterocyclic analogs, esters, ethers, and salts of isomers, homologues, nitrogen-heterocyclic analogs, esters, or ethers, if the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation or class description:

. . . .

191. Substituted Cathinones.--Unless specifically excepted, listed in another schedule, or contained within a pharmaceutical product approved by the United States Food and Drug Administration, any material, compound, mixture, or preparation, including its salts, isomers, esters, or ethers, and salts of isomers, esters, or ethers, whenever the existence of such salts is possible within any of the following specific chemical designations:

a. Any compound containing a 2-amino-1-phenyl-1-propanone structure;

b. Any compound containing a 2-amino-1-naphthyl-1-propanone structure; or

c. Any compound containing a 2-amino-1-thiophenyl-1-propanone structure,

whether or not the compound is further modified:

(I)  With or without substitution on the ring system to any extent with alkyl, alkylthio, thio, fused alkylenedioxy, alkoxy, haloalkyl, hydroxyl, nitro, fused furan, fused benzofuran, fused dihydrofuran, fused tetrahydropyran, fused alkyl ring, or halide substituents;

(II)  With or without substitution at the 3-propanone position with an alkyl substituent or removal of the methyl group at the 3-propanone position;

(III) With or without substitution at the 2-amino nitrogen atom with alkyl, dialkyl, acetyl, or benzyl groups, whether or not further substituted in the ring system; or

(IV) With or without inclusion of the 2-amino nitrogen atom in a cyclic structure, **including, but not limited to**: . . . .

*Id.* (emphasis added). Section 893.03(1)(c)191.c.(IV) lists forty-five specific substances. Dimethylpentylone is not one of the listed substances.

Appellant claims that he cannot be convicted of possession or trafficking in Dimethylpentylone, because it is not specifically enumerated as a "substituted cathinone" under section 893.03(1)(c)191. Therefore, appellant argues, the trial court should have granted his JOA motion. Appellant does not argue that Dimethylpentylone is not similar to the enumerated substances but only that Dimethylpentylone is not enumerated itself.

Section 893.03(1)(c)191. provides an extensive, non-exhaustive list of different types of chemicals and molecular structures prohibited under the statute. Specifically, section 893.03(1)(c)191.c.(IV) provides a list of substituted cathinones "including, but not limited to" forty-five substances. Words such as "including," however, are words of expansion, not limitation. In *White v. Mederi Caretenders Visiting Services of Southeast Florida, LLC*, 226 So. 3d 774 (Fla. 2017), the court explained with respect to a different statute:

> The statute states facially that it "includes, but is not limited to." The statute was never designed or intended to be an exhaustive list.
>
> . . .
>
> Generally, it is improper to apply expressio unius to a statute in which the Legislature used the word "include." See 2A Norman J. Singer, Sutherland Statutory Construction § 47.25 (7th ed. 2014). This follows the conventional rule in Florida that the Legislature uses the word "including" in a statute as a word of expansion, not one of limitation.

*Id.* at 781.

Section 893.03(1)(c)191. also includes the phrase "whether or not the compound is further modified," which is further evidence that the list is intended to be expansive and to include other chemicals similar in nature to those listed. Thus, the fact that Dimethylpentylone is not enumerated in section 893.03(1)(c)191. is not dispositive.

The expert testified that Dimethylpentylone is a substituted cathinone.[1] He explained that it was "one of those substances that meets all of the criteria in the Florida Statute to be controlled as a substituted cathinone," based on its molecular structure, and that it was chemically similar to MDMA, or Ecstasy. Appellant offered no contrary testimony. As competent substantial evidence supported the State's case, the trial court correctly denied the motion for acquittal.

Appellant primarily contends that he was denied due process by being convicted of possessing a substance not specifically listed as prohibited under section 893.03(1)(c)191. This is in essence a vagueness challenge to section 893.03(1)(c)191. "A statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence with a reasonable opportunity to know what is prohibited, and is written in a manner that encourages or permits arbitrary or discriminatory enforcement." *Cashatt v. State*, 873 So. 2d 430, 435 (Fla. 1st DCA 2004).

That section 893.03(1)(c)191. criminalizes substances based on their molecular structures, of which a common person in possession of these substances would be unaware, does not make it unconstitutional. In *State v. Adkins*, 96 So. 3d 412 (Fla. 2012), our supreme court held that eliminating knowledge of the illegal nature of a substance as an element of narcotics crimes did not violate due process. *Id.* at 422. The supreme court also noted that lack of knowledge of a substance's illegal nature is an affirmative defense, although it would rarely apply. *Id.* Thus, the fact that a common person would not be aware of the molecular structure of a substance in his or her possession does not render section 893.101(1)(c)191. unconstitutionally vague.

While appellant advocates for this court to adopt the dissent in *Gun v. State*, 171 So. 3d 184 (Fla. 4th DCA 2015), we note section 893.03(1)(c) has been significantly amended since *Gun*. In *Gun*, we affirmed the defendant's conviction for violating his parole by possessing "synthetic marijuana." *Id.* at 185–86. Judge Forst dissented, arguing that possession of "synthetic marijuana" was not a crime in and of itself, and

---

[1] To the extent appellant argues in his reply brief that the witness was not qualified as an expert, he failed to preserve this issue by not objecting to the expert's testimony or qualifications to testify. Moreover, the expert testified about his extensive qualifications in drug chemistry and controlled substance analysis. *See Clark v. State*, 190 So. 3d 146, 149–50 (Fla. 4th DCA 2016) (noting that an appellant who does not object to witness's qualifications or that the expert is not qualified to testify fails to preserve the issue for appeal).

while section 893.03(1)(c), Florida Statutes (2013), listed several specific synthetic cannabinoids as Schedule I substances, no evidence existed that the defendant had possessed one of the specifically listed synthetic cannabinoids. *Id.* at 186–87 (Forst, J., dissenting).

The amendment of section 893.03(1)(c) in part addressed Judge Forst's concerns. In May 2013, when the *Gun* defendant was alleged to have possessed "synthetic marijuana," section 893.03(1)(c) listed specific substances but did not list "synthetic cannabinoids," nor did section 893.03(1)(c) contain any "included but not limited to" lists. Meanwhile, the July 2023 version of section 893.03(1)(c) proscribes both "synthetic cannabinoids" and "substituted cathinones" with extensive "including but not limited to" lists. *Compare* § 893.03(1)(c), Fla. Stat. (2013), *with* § 893.03(1)(c)190.–191., Fla. Stat. (2023). Thus, the *Gun* dissent's reasoning does not apply here, where section 893.03(1)(c)191 proscribes "substituted cathinones" as a whole. Although section 893.03(1)(c)191.c.(IV) lists dozens of specific substances, this list is preceded by the language "including but not limited to," signaling that section 893.03(1)(c)191.c.(IV) proscribes more substances than are specifically listed. Those additional substances are listed by their chemical structures, and the State's expert testified that Dimethylpentylone falls within one of the chemical structures listed in section 893.03(1)(c)191.c.(IV).

As we conclude that the court did not err in denying appellant's motion for judgment of acquittal, we affirm appellant's conviction.

### Denial of Motion to Correct Sentencing Error

"Because a motion to correct a sentencing error involves a pure issue of law, our standard of review is de novo." *Metellus v. State*, 310 So. 3d 90, 92 (Fla. 4th DCA 2021) (quoting *Brooks v. State*, 199 So. 3d 974, 976 (Fla. 4th DCA 2016)). Constitutional claims are also reviewed de novo. *Davis*, 227 So. 3d at 139.

In appellant's rule 3.800(b)(2) motion to correct a sentencing error, he claimed that the trial court must apply *Erlinger v. United States*, 602 U.S. 821 (2024), in which the United States Supreme Court reiterated the principle that a jury, rather than a judge, must find beyond a reasonable doubt nearly all facts that lead to a sentencing enhancement. *Id.* at 835. Here, the sentencing court did not convene a jury to make the findings necessary to the HFO designation. Thus, appellant contends, the Fifth and Sixth Amendments require a new sentencing proceeding. We disagree. While the trial court, post-*Erlinger*, should have convened a jury

to designate appellant as an HFO, this was harmless error as the evidence conclusively established that appellant qualified as an HFO.

In *Erlinger,* the United States Supreme Court did not announce a new constitutional principle but reiterated its adherence to its prior decisions that a jury, rather than a judge, must find beyond a reasonable doubt nearly all facts that lead to a sentencing enhancement. *Id.* at 835. The Court carved out a limited exception that a judge may find the facts of prior convictions and the then-existing elements of those convictions. *Id.* at 839. Included in this limited function is determining which date and in which jurisdiction the offenses occurred. *Id.* at 840.

Thus, *Erlinger* held that the judicial inquiry is very limited. In imposing an HFO sentence, the findings that a defendant has previously been convicted of two or more felonies and that the current felony and at least one of the two prior felonies were not violations of section 893.13 related to the purchase or possession of controlled substances are the types of limited judicial findings allowed by *Erlinger. Id.* at 839–40. All other facts which would be necessary to an enhanced sentence must be submitted to a jury. With respect to an HFO sentence, those issues would include the timing of the offense with respect to the past qualifying felonies or the defendant's release from prison or supervision; whether the defendant has been pardoned for any of the qualifying felonies; or whether any of the convictions for qualifying felonies have been set aside in postconviction proceedings.

While the State concedes that some of these findings were not submitted to a jury, we agree with its argument that any error in failing to submit sentence enhancement questions to a jury is subject to harmless error review. In *Galindez v. State*, 955 So. 2d 517 (Fla. 2007), our supreme court held an *Apprendi/Blakely*[2] violation was subject to a harmless error analysis. *Id.* at 522–23 (citing *Washington v. Recuenco*, 548 U.S. 212 (2006)); *see also Plott v. State*, 148 So. 3d 90, 94 (Fla. 2014); *Williams v. State*, 242 So. 3d 280, 290 (Fla. 2018) (holding that *Alleyne*[3] violations are subject to harmless error review), *receded from on other grounds*, *State v. Manago*, 375 So. 3d 190 (Fla. 2023).

The harmless error inquiry is "whether the record demonstrates beyond a reasonable doubt that a rational jury would have found" that appellant qualified as an HFO. *Galindez,* 955 So. 2d at 523. Applying that standard

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004).
[3] *Alleyne v. U.S.*, 570 U.S. 99 (2013).

to this case, we conclude that the error in failing to submit the HFO factors to the jury was harmless beyond a reasonable doubt. The State introduced evidence of the convictions, their dates, the dates of release from prison, and the fact that appellant had not been pardoned or any convictions set aside. An examination of the qualifying felonies showed that none were convictions pursuant to section 893.13, Florida Statutes. Appellant did not object to any of the State's evidence, did not introduce any contrary evidence, and made no argument against the application of the HFO enhancement. Therefore, the record demonstrates beyond a reasonable doubt that a rational jury would have found that appellant qualified as an HFO. *Id.* at 523. Any error in not empaneling a jury to make the requisite HFO findings was harmless beyond a reasonable doubt.

## Conclusion

The trial court properly denied appellant's motion for judgment of acquittal. While Dimethylpentylone, the substance in which appellant was charged as trafficking, is not specifically listed in section 893.03(1)(c)191., it is included within those substances by identification of its chemical composition. An expert testified that it met the elements of a substitute cathinone. Application of section 893.03(1)(c)191. to appellant does not violate due process.

As to appellant's sentence, we also affirm, as the failure to have the jury make the findings necessary for sentencing appellant as an HFO was harmless beyond a reasonable doubt.

*Affirmed.*

KLINGENSMITH, C.J., and FORST, J., concur.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***